Donna M. HOUGHTON

v.

**NEW JERSEY MANUFACTURERS
INSURANCE COMPANY.**

Civ. A. No. 84–4899.

United States District Court,
E.D. Pennsylvania.

July 30, 1985.

Thomas Branca, Norristown, Pa., for plaintiff.

Albert S. Shaw, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

This case involves a claim by plaintiff that defendant caused to be prepared and received a credit report on plaintiff in violation of the disclosure requirements of the Fair Credit Reporting Act ("FCRA" or "the Act") and other of plaintiff's constitutional and common law rights. Prior to trial both parties moved for summary judgment on all liability issues. Following argument, the court granted plaintiff's motion seeking to hold the Fair Credit Reporting Act applicable to the credit report at issue and found defendant had violated the Act's disclosure requirements. Conversely, defendant's motion for summary judgment was granted as to all of plaintiff's remaining claims. All liability issues having been decided, the case was tried before the court without a jury solely on the issue of damages. The court found in favor of plaintiff and awarded compensatory and punitive damages totaling $7,000. Plaintiff subsequently petitioned for attorney's fees and costs.

The following supplements the court's bench rulings administered at both the summary judgment hearing and at the bench trial, and rules upon plaintiff's petition for attorney's fees and costs.

## I. CROSS–MOTIONS FOR SUMMARY JUDGMENT

### A. *Facts*

Summary judgment is proper only when the record clearly establishes that no genuine issue of material fact remains to be tried and that the moving party is entitled to judgment as a matter of law. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962); *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir.1978). Any doubt respecting the existence of a material fact must be resolved against the moving party, and all inferences must be viewed in the light most favorable to the party opposing summary judgment. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

Based on these standards, the undisputed facts in this case are as follows:

On November 19, 1977, plaintiff Donna M. Houghton ("plaintiff") was involved in an automobile collision with Bernice P. Rosenfeld, an insured of defendant New Jersey Manufacturers Insurance Company ("defendant"). On March 16, 1979, plaintiff filed suit against Rosenfeld for injuries resulting from the November 19, 1977 collision, including a claim for lost earnings.

On May 14, 1979, shortly after the case was filed, defendant requested that Equifax Services, Inc. ("Equifax") conduct an investigation of plaintiff and prepare a written report.[1] Defendant specifically requested that the investigation include: (1) "Activities since date of accident" (2) "Cover fully past history (illness, injuries, hospitalization, etc.)" and (3) "General financial information (income, property, etc.)." Neither Equifax nor defendant notified plaintiff that a report had been requested.

On May 22, 1979, Equifax submitted to defendant a three-page written report ("Equifax Report" or "the Report"). The Report included interviews with three of plaintiff's neighbors, reference to a previous report regarding a claim made by plaintiff's mother-in-law, reference to a check made through Montgomery County records, a check for any previous reports

[1.] Defendant's request was submitted to Equifax on a preprinted form provided by Equifax. Defendant disclosed to Equifax on the preprinted request form that the information was to be used to investigate plaintiff's claims in the litigation involving defendant's insured.

on plaintiff, and a check made through existing credit files prepared on plaintiff.[2] A copy of the report was forwarded by defendant to Frederick Fletcher, Esquire, who was retained by defendant to represent its insured Rosenfeld and in November, 1979, the case was settled.

Some four years later, on October 21, 1983, plaintiff first learned of the existence of the 1979 Equifax Report. Plaintiff made written requests to defendant demanding that defendant disclose the substance of the Report to her, which defendant repeatedly refused to do.

On October 18, 1984, plaintiff filed the instant action against defendant alleging: violations of the Fair Credit Reporting Act ("FCRA" or "the Act"), 15 U.S.C. § 1681 *et seq.* (1982); violation of her right to privacy under the United States and Pennsylvania Constitutions; invasion of privacy under Pennsylvania common law; and intentional infliction of emotional distress.

### B. *Discussion*

### 1. *Plaintiff's Claims Under the FCRA*

### a. *Applicability of the FCRA*

Defendant does not deny that it requested and received the Equifax Report without giving notice to plaintiff, nor that it refused to disclose the substance of the Report to plaintiff upon her several requests to do so. Rather, defendant contends that the Equifax Report is not a "consumer report" or "investigative con-

sumer report" within the meaning of the FCRA and therefore the Act does not apply to defendant's conduct. The court disagrees.

At the heart of the dispute is whether the Equifax Report is a "consumer report" under the Act. 15 U.S.C. § 1681a(d) defines "consumer report" as:

any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, characteristics or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit insurance to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) other purposes authorized under section 1681b of this title.[3]

Defendant contends that under this definition, if the requester of the report does not use or intend to use the report for one of the purposes enumerated in § 1681a(d) then it is not a consumer report. Since it requested the Equifax Report for the purpose of investigating the validity of plaintiff's injuries allegedly sustained in the November 19, 1977 accident, and not for one of the purposes listed in § 1681a(d), defendant argues that, by definition, the Equifax Report cannot be a consumer report. This contention, however, is based on the mistaken premise that a "consumer report" determination is governed entirely by the

---

**2.** As to the credit file check the report stated: "We did check available credit files through a confidential source, and we are unable to come up with any financial irregularities."

**3.** Section 1681b provides:

A consumer reporting agency may furnish a consumer report under the following circumstances and no other:

(1) In response to the order of a court having jurisdiction to issue such an order.

(2) In accordance with the written instructions of the consumer to whom it relates.

(3) To a person which it has reason to believe—

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be

furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

(B) intends to use the information for employment purposes; or

(C) intends to use the information in connection with the underwriting of insurance involving the consumer; or

(D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a government instrumentality required by law to consider an applicant's financial responsibility or status; or

(E) otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer.

purpose for which the information was requested.

■ The critical phrase here in the definition of "consumer report" is the requirement that the information must be "used or expected to be used *or collected in whole or in part*" (emphasis added) for one of the definition's enumerated transactions. Under this definition, the court's focus of inquiry is on the purpose for which the *credit reporting agency* originally *collected* the information, (for only it "collects" the information), and not, as defendant contends, on the purpose for which it was released.[4] If the information was *collected* "in whole or in part" for one of the purposes listed in 1681a(d) or 1681(b), regardless of its ultimate use, it is a consumer report. *See Heath v. Credit Bureau of Sheridan, Inc.,* 618 F.2d 693, 696 (10th Cir.1980); *Boothe v. TRW Credit Data,* 523 F.Supp. 631, 634 (S.D.N.Y.1981).

Defendant's interpretation of § 1681a(d) was specifically rejected by the court in *Boothe,* where the court stated:

> Defendants would have this court hold that the release of a consumer report to a third party for a purpose not permitted by the Act converts the report into one outside the scope of the Act. Such a holding would render section 1681b, which restricts the release of consumer reports to certain specified circumstances, totally ineffective. The Act applies when the information in question was collected for one of the purposes provided in the Act, and it requires that the information be made available to third parties only for those purposes.

523 F.Supp. at 634. In a later opinion, the court concluded:

> An examination of the report issued to plaintiff upon his request ... leads the court to conclude that the information collected by TRW was "expected to be used or collected in whole or in part" for ... credit purposes.... The information in the TRW files included personal and credit information about plaintiff and his wife ... Thus, although TRW may have issued the report ... for reasons not related to credit, the report is a consumer report.

*Boothe v. TRW Credit Data,* 557 F.Supp. 66, 70 (S.D.N.Y.1982).

■ In the present case, had the Equifax Report contained only information obtained through interviewing plaintiff's neighbors and checking into public court records, defendant's position that the Report is not a consumer report would be persuasive. However, Equifax also obtained information from plaintiff's credit files—files in existence prior to the request and preparation of the Equifax Report. The consumer reporting agency which originally collected this information,[5] did so, at least "in part", for the purpose of determining plaintiff's eligibility for credit or insurance or for employment purposes or for one of the purposes listed in § 1681b. The Act was intended to apply to the release of exactly this type of information. Once a consumer reporting agency collects credit information for one of the purposes listed in 1681a(d) or 1681b, the release of such information, for any reason, creates a consumer report requiring satisfaction of the Act's disclosure requirements.[6] *Heath,* 618 F.2d at 696; *Boothe,* 523 F.Supp. at 634.

---

**4.** Similarly, the term "expected to be used" must refer to what the credit reporting agency, not the requesting party, believed. *See Heath v. Credit Bureau of Sheridan, Inc.,* 618 F.2d 693, 696 (10th Cir.1980).

**5.** It is unclear from the record whether Equifax accessed its own credit files on plaintiff, or whether these files were collected by another credit reporting agency and produced to Equifax for their inspection. As to defendant's liability under the Act, however, it is irrelevant

which credit reporting agency collected the credit information on plaintiff.

**6.** A finding that the Equifax Report falls within the purview of the FCRA does not mean that defendant was not entitled to see the Report. To the contrary, the financial information being relevant to plaintiff's lost earnings claim, it was clearly discoverable, including the information contained in plaintiff's credit files. The FCRA only required that defendant give notice to plaintiff that it was requesting the Report, and upon her request to see the report, providing

■ Accordingly, the court finds that the Equifax Report was (1) a written communication of information (2) by a consumer reporting agency (Equifax)[7] (3) bearing on plaintiff's (a consumer)[8] credit worthiness, credit standing or credit capacity (4) which was expected to be used or collected at least in part for the purpose of serving as a factor in establishing plaintiff's eligibility for credit or insurance, or for employment, or one of the purposes authorized under § 1681b. As such it is a consumer report under the FCRA.[9]

Even if the credit information was originally collected for the purpose of investigating plaintiff's allegations in her civil suit against defendant's insured, the court nevertheless finds that the Report is a consumer report because it fits squarely within the "business transaction" purpose defined in § 1681b(3)(E).[10]

The Equifax Report, taken as a whole, was prepared by Equifax "in connection with a business transaction" involving defendant, defendant's insured, and plaintiff, as a result of a business agreement between those parties. Defendant bound itself to a contract for insurance where it agreed, for a premium, to provide its insured a legal defense in court proceedings and certain coverages in respect to other parties, such as plaintiff, who may during the term of the contract make claims under the precise conditions spelled out in that insurance contract. Not all litigation matters, of course, would fall under the "business transaction" purpose merely because persons or issues involving business and commerce are present. For example, an investigation by one spouse against another in the midst of an ongoing divorce action would not amount to a "business transaction." In fact, the court cannot envision any litigation matters involving purely social, political, or religious issues falling within the parameters of § 1681b(3)(E). Where, as here, however, the party in question has entered into a lawful contractual engagement, that has at its very core the clear prospect and expectation that civil litigation will result and that party for a price pledges its legal and financial resources to the defense of the insured in court, if necessary, the resultant defense of the claim, in court or out, is plainly a "business transaction." If the report was developed to fulfill part of the obligation to defend, it is consequently for a business transaction purpose.

■■ Accordingly, the court finds that defendant, having a legitimate business need for the information, obtained the

---

her with a copy. These disclosure requirements serve laudable purposes, and are clearly reasonable in light of the lack of prejudice to the requesting party.

**7.** 15 U.S.C. § 1681a(f) defines "consumer reporting agency" as:

any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

It is undisputed that Equifax is a consumer reporting agency.

**8.** 15 U.S.C. § 1681a(c) provides: "The term 'consumer' means an individual."

**9.** In support of its position that the Equifax Report is not a consumer report, defendant refers to the legislative history and administrative interpretations of the Act. The Supreme Court has suggested that when the language of a statute is clear, "judicial inquiry is complete." *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981). The Third Circuit recently held that where a statute is plain and unambiguous "an extraordinarily heavy burden" is placed on the party who seeks to vary it by reference to legislative history. *Paskel v. Heckler,* Nos. 83–1800, 84–1060, 84–1067, slip op. at 7 (3d Cir. September 10, 1984). "[O]veremphasis on legislative guides may lead to a distorted view of the statutory purpose, 'for much less thought is spent on the future implications of committee reports and explanations on the floor than in choosing the words of a statute.'" Slip op. at 8 (quoting Cox, *Judge Learned Hand and the Interpretation of Statutes,* 60 Harv.L.Rev. 370, 381 (1947) ). After reviewing the legislative history of the Act the court finds no justification in varying from the clear language of § 1681a(d).

**10.** *See* Footnote 3, *supra,* for the text of this provision.

Equifax Report in connection with a business transaction involving a consumer, and therefore, pursuant to § 1681a(d) and § 1681b(3)(E), is a consumer report. *See Beresh v. Retail Credit Co., Inc.,* 358 F.Supp. 260, 262 (C.D.Cal.1973).[11]

### b. *Violations of the FCRA*

Plaintiff alleges violations of §§ 1681d(a) and (b) and § 1681q.

Section 1681d(a) provides, in pertinent part:

*Disclosure of fact of preparation*

(a) A person may not procure or cause to be prepared an investigation consumer report on any consumer unless—

(1) it is clearly and accurately disclosed to the consumer that an investigative consumer report including information as to his character, general reputation, personal characteristics, and mode of living, whichever are applicable, may be made, and such disclosure (A) is made in writing, mailed, or otherwise delivered, to the consumer, not later than three days after the date on which the report was first requested, and (B) includes a statement informing the consumer of his right to request additional disclosures under subsection (b) ...

It is undisputed that defendant (a person) caused an investigative consumer report[12] to be prepared concerning plaintiff (a consumer) and that defendant failed to disclose the fact of the report's preparation to plaintiff. As a matter of law, the court finds that defendant violated § 1681d(a) of the Act.

Section 1681(d) provides:

*Disclosure on request of nature and scope of investigation*

(b) Any person who procures or causes to be prepared an investigative consumer report on any consumer shall, upon request made by the consumer within a reasonable period of time after the receipt by him of the disclosure required by subsection (a)(1) of this section, shall make a complete and accurate disclosure of the nature and scope of the investigation requested. This disclosure shall be made in a writing mailed, or otherwise delivered, to the consumer not later than five days after the date on which the request for such disclosure was received from the consumer or such report was first requested, whichever is the later.

It is undisputed that upon discovering the existence of the Equifax Report, and within a reasonable time thereafter, plaintiff made written requests to defendant for disclosure of the contents of the Report, which defendant repeatedly failed to do. As a matter of law, therefore, the court finds that defendant violated § 1681d(b) of the Act.

Section 1681q provides:

---

**11.** The court is not persuaded by those decisions cited by defendant which hold that § 1681b cannot be read to enlarge the definition of consumer report found in § 1681a(d). *See, e.g., Ley v. Boron Oil Co.,* 419 F.Supp. 1240 (W.D.Pa. 1976); *Horton v. Pinkerton's, Inc.,* No. H–75–C–17 (E.D.Ark. Nov. 19, 1976) (unpublished); *McKeel v. Retail Credit Co.,* Civ. No. 53130 (4th Dist. Idaho, March 10, 1975) (unpublished). Section 1681a(d) plainly includes in the definition of consumer report any of the "other purposes authorized under Section 1681b" of the Act. *See Beresh,* 358 F.Supp. at 262. Statutory construction mandates that where a statute is plain on its face a court need not interpret the statute to mean otherwise. *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981).

**12.** 15 U.S.C. § 1681a(e) defines "investigative consumer report" as:

a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information.

The Equifax Report was a consumer report in which information on plaintiff's character, general reputation, etc., was obtained, in part, through personal interviews with plaintiff's neighbors. As such, the Report was an "investigative consumer report."

*Obtaining information under false pretenses*

Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined not more than $5,000 or imprisoned not more than one year, or both.

There are no facts before the court which evidence plaintiff's allegation that defendant obtained the Equifax Report under false pretenses. Defendant, in fact, disclosed to Equifax on the report request form that the information was to be used to investigate an insurance claim. As a matter of law, therefore, the court finds that defendant did not violate § 1681q.

2. *Plaintiff's Constitutional Invasion of Privacy Claim*

a. *Claim Under United States Constitution*

■ Plaintiff alleges that defendant's conduct violated her right to privacy under the United States Constitution. In *Elliott v. Bloor*, 425 F.Supp. 1140 (E.D.Pa.1976) (Bechtle, J.), this court noted that in order to maintain an action against a private party for federal constitutional violations, it is necessary to establish that the defendant's allegedly unconstitutional acts constituted "state action." *Id.* at 1144.

This state action requirement may be satisfied if either of two conditions is met. First, state action may be found where "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974); *Hollenbaugh v. Carnegie Free Library*, 545 F.2d 382, 383 (3d Cir.1976); *Broderick v. Associated Hospital Service*, 536 F.2d 1, 4 (3d Cir.1976). Second, state action is present where the state and the defendant have entered into a symbiotic relationship, in which the state has "so far insinuated itself into a position of interdependence with [the defendant] that it must be recognized as a joint participant in the challenged activity...." *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961). 425 F.Supp. at 1144. *See also Hudgens v. NLRB*, 424 U.S. 507, 513, 96 S.Ct. 1029, 1033, 47 L.Ed.2d 196 (1976); *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948). Neither of these conditions can be satisfied in the instant case. Plaintiff, therefore, has failed to state a cause of action for violation of her right to privacy under the federal constitution.

b. *Claim Under Pennsylvania Constitution*

Plaintiff also alleges that defendant's conduct violated her right to privacy under the Pennsylvania Constitution. The privacy interest of individuals is explicitly protected under the Pennsylvania Constitution article 1, Section 1.[13] *In re June 1979 Allegheny County Investigating Grand Jury*, 490 Pa. 143, 415 A.2d 73, 77 (1980). No Pennsylvania court has specifically decided, however, whether state action is a necessary element in maintaining a cause of action for invasion of privacy under the Pennsylvania Constitution. This court, therefore, must decide how Pennsylvania would resolve the issue.

In *Commonwealth v. National Gettysburg Battlefield Tower, Inc.*, 454 Pa. 193, 311 A.2d 588 (1973), the Pennsylvania Supreme Court observed:

Article 1 is entitled "Declaration of Rights" and all of the first twenty-six sections of Article I which state those specific rights, must be read as limiting the powers of government to interfere with the rights provided therein.

. . . . .

---

**13.** Pa. Const. art. 1, section 1 provides, in pertinent part:

[a]ll men ... have certain inherent and indefeasible rights, among which are those ... of acquiring, possessing, and protecting property and reputation....

*[T]he first twenty-six sections of Article I ... merely contain a limitation on the powers of government.*

311 A.2d at 592 (emphasis added).[14]

█ It is apparent from the language of this decision that, if faced with the issue, the Pennsylvania Supreme Court would find that state action is a prerequisite to maintaining an invasion of privacy action under article 1, § 1 of the Pennsylvania Constitution. Since no state claim existed in the present case, plaintiff's state constitutional claim must be dismissed.

### 3. *Plaintiff's Common Law Claim for Invasion of Privacy*

█ In addition to her constitutional privacy claims, plaintiff makes a claim under Pennsylvania common law for invasion of privacy. Pennsylvania has adopted sections 652B to 652E of the Restatement (Second) of Torts (Tent. Draft No. 13, 1967), which separates invasion of privacy into four distinct torts: 652B—intrusion upon seclusion; 652C—appropriation of name or likeness; 652D—publicity given to private life; and 652E—publicity placing person in false light. *See Marks v. Bell Telephone Co. of Pa.*, 460 Pa. 73, 331 A.2d 424, 430 (1975); *Fogel v. Forbes, Inc.*, 500 F.Supp. 1081, 1087 (E.D.Pa.1980) (Broderick, J.). Paragraph 18 of plaintiff's complaint[15] alleges a claim based on § 652D. Section 652 provides:

> One who gives publicity to matters concerning the private life of another, of a kind highly offensive to a reasonable man, is subject to liability to the other for invasion of his privacy.

Restatement (Second) of Torts § 652D (Tent. Draft No. 13, 1967). The three ele-ments of this tort are: (1) publicity (2) which is unreasonable and (3) is given to a private fact. *See Vogel v. W.T. Grant Company*, 458 Pa. 124, 327 A.2d 133, 136 (1974); *Wells v. Thomas*, 569 F.Supp. 426, 436 (E.D.Pa.1983) (Giles, J.).

> Publicity ... means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.
>
> . . . .
>
> Thus *it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.* On the other hand, any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in this Section. The distinction, in other words, is one between private and public communication.

Restatement (Second) of Torts § 652, comment (a) (1977) (emphasis added).

█ In the present case, viewing the facts most favorably to plaintiff, only a very small group of persons were made privy to the Equifax Report. Communication to this small group does not satisfy the publicity requirement and thus plaintiff's claim must fail. As such, the Court finds it unnecessary to discuss the remaining elements of the tort.[16]

---

**14.** In the two leading Pennsylvania cases finding a cause of action for invasion of privacy under the Pennsylvania Constitution state action was clearly present. *See In re June 1979 Allegheny County Investigating Grand Jury*, 490 Pa. 143, 415 A.2d 73 (1980); *In re B*, 482 Pa. 471, 394 A.2d 419 (1978).

**15.** Paragraph 18 provides:

The actions of defendant in supplying said consumer report and/or investigative con-sumer report to others, sufficiently publicizing said reports, subjects defendant to liability under Pennsylvania common law for invasion of privacy of given [sic] publicity to matters concerning the private life of plaintiff.

**16.** To the extent plaintiff seeks summary judgment for "intrusion upon seclusion," such motion is denied for failure to plead this cause of action in the complaint.

Although now moot, the court wishes to respond to defendant's contention that plaintiff's

*4. Plaintiff's Claim for Intentional Infliction of Emotional Distress*

 Pennsylvania recognizes the tort of intentional infliction of emotional distress as defined in section 46 of the Restatement (Second) of Torts (1965). *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273–74 (3d Cir.1979). Section 46(1) provides in pertinent part:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

The tort involves four elements: (1) the conduct must be extreme and outrageous, (2) the conduct must be intentional or reckless, (3) it must cause emotional distress, and (4) the distress must be severe. *Chuy,* 595 F.2d at 1273; *Denenberg v. American Family Corporation of Columbus, Ga.,* 566 F.Supp. 1242, 1251–52 (E.D.Pa.1983) (Shapiro, J.).

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

*Kutner v. Eastern Airlines, Inc.,* 514 F.Supp. 553, 557 (E.D.Pa.1981) (Broderick, J.) (*quoting* Restatement (Second) of Torts, § 46, comment d).

 The court finds that defendant's conduct was not "outrageous in character" or "so extreme in degree, as to go beyond all possible bounds of decency" or "regarded as atrocious, and utterly intolerable in a civilized community." Thus, plaintiff has not satisfied the first element of her cause of action.

Furthermore, plaintiff has failed to establish the second, third and fourth elements of her cause of action. There is no basis in the record—even according to plaintiff's version of the facts—to support the idea that defendant intended to cause plaintiff emotional distress. Likewise, the court finds that whatever emotional distress defendant's conduct may have caused plaintiff, such distress was not severe.

## II. DAMAGES

 As noted earlier in this opinion, the court conducted a non-jury trial on damages. Having heard testimony and argument, and for the reasons stated at the bench trial, the court found for plaintiff on her § 1681d(a) claim ($1,000 compensatory damages; and no punitive damages) and on her § 1681d(b) claim ($2,500 compensatory damages and $3,500 punitive damages).

## III. ATTORNEY'S FEES

On June 12, 1985, counsel for plaintiff filed a motion praying for costs of the action, together with reasonable attorney's fees. Pursuant to § 1681n and § 1681o of the Act, plaintiff is entitled to costs as well as reasonable attorney's fees, as may be determined by the court.

 In determining plaintiffs' legal fee award, this court is bound by the framework for determining such awards which has been set forth in *Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973) ("*Lindy I*") and subsequently refined in *Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary*

---

invasion of privacy tort claim is barred by the one year statute of limitations, 42 Pa.Cons.Stat. § 5523 (Purdon's Supp.1985). Defendant contends that the "discovery rule" does not apply to § 5523. The court, however, sees no reason why the "discovery rule" should not apply.

Non-application of the "discovery rule" in the present case would mean that the statute would have run prior to the time plaintiff even knew of the existence of the Equifax Report. Such a patently unfair result is exactly the evil which the "discovery rule" was intended to prevent.

*Corp.*, 540 F.2d 102 (3d Cir.1976) (en banc) ("*Lindy II*"); *Merola v. Atlantic Richfield Co.*, 493 F.2d 292 (3d Cir.1974); *Merola v. Atlantic Richfield Co.*, 515 F.2d 165 (3d Cir.1975); *Prandini v. National Tea Co.*, 557 F.2d 1015 (3d Cir.1977); *Prandini v. National Tea Co.*, 585 F.2d 47 (3d Cir. 1978); *Rodriguez v. Taylor*, 569 F.2d 1231 (3d Cir.1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); *Hughes v. Repko*, 578 F.2d 483 (3d Cir.1978); *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208 (3d Cir.1978) and *Walker v. Robbins Hose Co. No. 1, Inc.*, 622 F.2d 692 (3d Cir.1980); *Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir.1983). This framework requires that the court make a determination of the number of hours reasonably necessary to perform the legal services for which compensation is sought. *Hughes*, 578 F.2d at 487. The reasonable number of hours is then multiplied by a reasonable hourly rate for the attorney providing the services, the latter being based on the court's determination of the attorney's reputation, status and type of activity for which the attorney is seeking compensation. *Lindy I*, 487 F.2d at 167. The sum of the two numbers is the "lodestar" which can then be adjusted upward or downward based on the contingency of success, and the quality of an attorney's work. In all instances plaintiffs have the burden of establishing entitlement to the award claimed and any adjustment to the "lodestar." *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Lindy II*, 540 F.2d at 117.

At the bench trial, the attorneys for both parties agreed that plaintiff's counsel could submit a detailed list of services rendered, the hours spent, and reasonable costs in preparing plaintiff's case, which plaintiff's counsel subsequently submitted with the petition for counsel fees and costs. With this information, the Court has a factual basis upon which to determine how many hours were devoted to various services for which compensation is now sought.

Plaintiff submits that her attorney spent 79.4 hours in preparing the case (63.4 non-trial hours; 16.0 trial hours). After a careful review of the attorney's time statement, the court finds that in two instances the claimed time is excessive and will be reduced.

Plaintiff's attorney alleges that he spent approximately 12 hours on legal research. Plaintiff testified that her present counsel represents her in a number of similar claims against other insurance companies. This court, in fact, has one such claim currently before it. There is little in this case, therefore, which required plaintiff's attorney to engage in extensive research as to legal issues peculiar to only this case. Consequently, the court will reduce the time spent on legal research by five (5) hours.

Plaintiff's attorney alleges that he spent 16 hours to "attend trial." The actual trial time of this case could not have exceeded a total of about 8 hours. The court therefore finds a total of 8 trial hours. The remaining time for which compensation is sought is reasonable. Accordingly, the court will allow a total of 58.4 non-trial hours and 8 trial hours.

Having first considered the hours spent and the services performed, it is now necessary to place an hourly value on those services. In arriving at these rates the court has evaluated the status, reputation and experience of plaintiff's attorney. *See Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pa.*, 581 F.Supp. 1412, 1415 (E.D.Pa.1984) (Bechtle, J.), *aff'd*, 762 F.2d 272 (3d Cir.1985). The court finds the reasonable hourly rate for non-trial time is worth $75.00 per hour and counsel's trial time is worth $100.00 per hour.

Accordingly, the court finds:

| | Compensable Hours | Hourly Rate | | |
|---|---|---|---|---|
| Non-Trial | 58.4 | $ 75 | = | $4,380.00 |
| Trial | 8 | $100 | = | 800.00 |
| | | | Lodestar | $5,180.00 |

After determining the lodestar amount of the fee, an adjustment may be made. *Lindy I,* 487 F.2d 161 (3d Cir.1973); *Lindy II,* 540 F.2d 102 (3d Cir.1976). The adjustment may be based on the contingent nature of the case, the quality of the work performed and the results obtained. *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Lindy I,* 487 F.2d at 169; *Lindy II,* 540 F.2d at 117. Plaintiff has requested that this court use a multiplier of 2. Defendant argues that if any fees are granted to plaintiff the court should adjust the lodestar downward and reduce plaintiff's fee petition.

 Considering the quality of the work performed, the positive result obtained, and most importantly, the risk involved in trying a case of first impression in this district on a close and difficult legal issue concerning the applicability of the FCRA, the court will apply a multiplier of 1.5. Thus, the court awards plaintiff $7,770.00 in counsel fees ($5,180 × 1.5 = $7,770).

Besides attorney's fees, plaintiff is entitled under the Act to reasonable costs expended. After a careful review of plaintiff's cost breakdown, the court finds that plaintiff's request for $1,284.66 in costs is reasonable.

## IV. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment seeking dismissal of plaintiff's claims under 15 U.S.C. § 1681q, invasion of privacy under the United States and Pennsylvania Constitutions, and in tort for invasion of privacy (publicity given to private life) and intentional infliction of emotional distress, will be granted. Plaintiff's motion as to these

claims will be denied. Conversely, the court will grant plaintiff's motion for summary judgment on her claims arising under 15 U.S.C. § 1681d(a) and § 1681d(b). Defendant's motion as to these claims will be denied.[17]

Judgment will be entered in plaintiff's favor for $7,000, representing $3,500 in compensatory damages and $3,500 in punitive damages. The court further awards $7,770 in attorney's fees and $1,284.66 in costs.

An appropriate Order will be entered.

**17.** To the extent either party seeks summary judgment on issues related to damages, such

motions are denied.