[No. 4363–1–III.   Division Three.   November 16, 1982.]

THOMAS J. KIBLEN, *Respondent,* v. LARRY PICKLE, ET AL, *Appellants.*

*Lawrence Cary Smith* and *Patrick Downey,* for appellants.

*Daniel J. Keane* and *Dean, Keane & Smith,* for respondent.

*E. Glenn Harmon* on behalf of American Council of Life Insurance, amicus curiae for appellants.

MUNSON, J.—Larry Pickle, d/b/a Interstate Detective Agency, and Grange Mutual Life Company (Grange) appeal a decision granting damages and attorney fees to Thomas Kiblen for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681. We reverse and dismiss.

The culmination of a multi–party and multi–issue trial results in only one issue on appeal: whether insurance claims reports ordered by insurance companies to verify disabilities reported by insured policyholders are "consumer reports" under the Fair Credit Reporting Act (FCRA). We hold they are not, with one qualification: the fact a claims report was made must be disclosed and a copy of it given to the claimant if it is the basis for denial of benefits to him.

Dr. Kiblen was a dentist. He applied to 40 different

insurance companies for disability and life insurance. He succeeded in obtaining policies from 13 of the companies, including Grange. Dr. Kiblen misrepresented on these applications the amount of money he made as a dentist and that he had never been rated up or declined insurance.

In 1973, according to his psychiatrist, he suffered a "phobic reaction to dentistry" which left him permanently disabled. This was fortuitous timing since Dr. Kiblen was paying more in insurance premiums than he was making at the time as a dentist. Pursuant to a waiver of premiums clause, Grange paid benefits for 2 years.[1] In late 1975, Grange suspected Dr. Kiblen was in the business of buying and selling guns and hired Mr. Pickle's detective agency to investigate. Mr. Pickle's report confirmed this suspicion and Grange denied Dr. Kiblen further benefits.[2] Upon cancellation of his benefits, Dr. Kiblen went to Mr. Pickle's office to see the report. However, following the advice of Grange, Mr. Pickle refused to allow Dr. Kiblen to review it.

Dr. Kiblen then filed suit against Mr. Pickle and Grange alleging denial of benefits and violations of the FCRA. This

---

[1]The policies state:

"GRANGE . . . AGREES TO WAIVE the payment of premiums under the policy, . . . if the Insured is totally disabled . . .

". . .

". . . total disability is defined as disability resulting from Injury or Sickness and which, for the first 24 months, completely prevents the Insured from engaging in his occupation, and which, after the first 24 months, completely prevents the Insured from engaging in any gainful work or service for which he is reasonably fitted by education, training, or experience.

"Total disability shall not be considered to exist for any period during which the Insured . . . is actively engaged in any gainful occupation.

". . .

"Proof of Continuance of Total Disability. The Company shall have the right to require proof of continuance of total disability from time to time during the first 2 years following receipt of due proof. After 2 years, proof will be required not more than once a year." Thus, at the request of the insurance company, the insured must show he is unable to pursue any gainful employment.

[2]Evidence at the trial also disclosed Dr. Kiblen was president of Superior Silver Mines and appellant's brief indicates Dr. Kiblen was also president of Nancy Lee Mines and Atlas Mines.

suit was consolidated with several other similar suits Dr. Kiblen had commenced against other insurance companies and investigative agencies. The trial court found Dr. Kiblen had made misstatements on insurance applications, was disabled from practicing dentistry, but was not disabled from engaging in other gainful employment. Despite this decision, the court allowed him $5,000 damages and $2,500 in attorney fees for violation of the FCRA.

The FCRA regulates the conduct of consumer reporting agencies and users of consumer reports. The act's purpose is "'to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report.'" *Equifax Inc. v. FTC,* 678 F.2d 1047, 1048 (11th Cir. 1982), quoting S. Rep. No. 517, 91st Cong., 1st Sess. 1 (1969). In particular, the act imposes liability upon producers of consumer reports under certain circumstances. A necessary prerequisite of liability under the act is that the person generating the report be a consumer reporting agency; unless this is established, no liability attends. *Rasor v. Retail Credit Co.,* 87 Wn.2d 516, 554 P.2d 1041 (1976).

> "[C]onsumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, *regularly engages* in whole or in part in the practice of assembling or evaluating . . . information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

(Italics ours.) 15 U.S.C. § 1681a(f). This provision of the statute has been interpreted as directed at those firms which regularly, as part of their business, gather or evaluate information on consumers. *D'Angelo v. Wilmington Med. Ctr., Inc.,* 515 F. Supp. 1250, 1253 (D. Del. 1981); *Mitchell v. First Nat'l Bank,* 505 F. Supp. 176, 177 (M.D. Ala. 1981). The record does not disclose whether Mr. Pickle's agency did this work "regularly". Nevertheless, it has been held that when an agency disseminates information bearing on a consumer's "'credit worthiness, credit standing, credit

capacity, character, general reputation, personal character-istics, or mode of living'", and the agency knows or expects that the information will be used in connection with a business transaction involving the consumer, the agency is a "consumer reporting agency" within the meaning of the FCRA. *Greenway v. Information Dynamics, Ltd.*, 399 F. Supp. 1092, 1095 (D. Ariz. 1974).

██ Assuming Larry Pickle, d/b/a Interstate Detective Agency, is a "consumer reporting agency" subject to the provisions of the FCRA, is an insurance claims report made to verify disability of the insured a consumer report cov-ered by the FCRA? In determining that it is not, we look not only at the statutory language itself, but also the legis-lative history of the act, the administrative enforcement agency's opinions on the issue, and existing case law.

Turning to the language of the statute itself, 15 U.S.C. § 1681a(d) provides:

> (d) The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, char-acter, general reputation, personal characteristics, or mode of living which is used or expected to be used . . . for the purpose of serving as a factor in *establishing the consumer's eligibility for (1) credit or insurance* to be used primarily for personal, family, or household pur-poses, . . . or (3) other purposes authorized under section 1681b . . .

(Italics ours.) 15 U.S.C. § 1681b provides:

> A consumer reporting agency may furnish a consumer report under the following circumstances and no other:
>
> . . .
>
> (3) To a person which it has reason to believe—
>
> . . .
>
> (C) intends to use the information in connection with the underwriting of insurance involving the con-sumer; or

The word insurance is used only once in section 1681a of the act and then only in conjunction with the words "eligi-bility for". If the words "eligibility for . . . insurance" are

to be understood in their normal and ordinary meaning, they mean eligibility to obtain insurance, *i.e.,* the report would only be a consumer report when used to grant or deny the consumer's initial application for insurance. In section 1681b(3)(C), the express words "in connection with the underwriting of insurance" also give added support to this interpretation.

The decision that insurance claims reports are not to be deemed "consumer reports" is also suggested by the early and subsequent legislative history of the act. Congress passed the FCRA in 1970. Prior to passage of the act, extensive hearings were held; however, no reference was made to insurance claims reports in these hearings or in the proposed bills.[3] Three years after the FCRA was enacted, Senator Proxmire, the original congressional sponsor, noted claim reports were not covered by the act, but perhaps should have been. *Cochran v. Metropolitan Life Ins. Co.,* 472 F. Supp. 827, 832 (N.D. Ga. 1979). Hearings on S. 3260, which would amend the FCRA to specifically include insurance claims reports, were held before the Subcommittee on Consumer Credit of the Senate Committee on Banking, Housing and Urban Affairs, 93d Cong., 1st Sess. 62 (1973). No action was forthcoming after those hearings. In 1975 and again in 1979, Senator Proxmire proposed amendments to the FCRA to include claims reports in the definition of "consumer reports". S. Rep. No. 1928, 96th Cong., 1st Sess. § 603(2) (1979); S. Rep. No. 8140, 94th Cong., 1st Sess. § 606(b)(1)(a) (1975). The fact these proposed amendments were never enacted is evidence the principal drafter and sponsor of the FCRA believed the act did not cover claims reports.

Further support for this determination is found in the administrative agency's opinions on this issue. Administra-

---

[3]Amendment of Consumer Credit Protection Act: Hearings on S. 823 Before Senate Comm. on Banking and Currency, 91st Cong., 1st Sess., 115 Cong. Rec. 33,408–13 (1969); H.R. Rep. No. 1587, 91st Cong., 1st Sess. (1970); S. 823, 91st Cong., 2d Sess., 116 Cong. Rec. 32,639–44, 35,938–43 (1970); H.R. 15073, 91st Cong., 2d Sess., 116 Cong. Rec. 32,639–44, 35,938–43, 36,569–77 (1970).

tive enforcement of the FCRA is delegated to the Federal Trade Commission (FTC), 15 U.S.C. § 1681s(a). Great deference should be given to the interpretation of a statute by the agency charged with its administration and enforcement, especially when a statute is in its initial stage of implementation and its provisions are yet untried and new. *Rasor v. Retail Credit Co., supra* at 525. In the FTC manual, *Compliance With the Fair Credit Reporting Act,* 5 Consumer Cred. Guide (CCH) ¶¶ 11,301, 307, at 59,828 (1977), the FTC answers the question: "Are 'CLAIMS REPORTS', . . . obtained by an insurer in connection with an insurance claim a consumer report?" by stating:

No, not at the time obtained. A report on a consumer obtained by an insurance company in connection with a claim against it, is not used to determine a consumer's "eligibility" for insurance (Section 603(d)(1)), or in connection with the "underwriting of insurance involving the consumer" (Section 604(3)(C)). Further, such a report is not obtained in connection with "a business transaction involving the consumer" (Section 604(3)(E)), at the time it is obtained. Accordingly, such a claims report is not a "consumer report". Conversely, it would be improper to use information originally collected in whole or in part for consumer reporting purposes in a claims or adjustment report, since such reports are not "in connection with a business transaction involving the consumer".

(Footnote omitted.)

The FTC has also promulgated other opinions in which it advised the insurance industry that claims reports are not consumer reports. *Degree of Disclosure—Insurance Reports Not Consumer Reports,* [1969–1973 Transfer Binder] Consumer Cred. Guide (CCH) ¶ 99,421 at 89,380–81 (May 18, 1971); *Insurance Claims Reports,* [1969–1973 Transfer Binder] Consumer Cred. Guide (CCH) ¶ 99,423 at 89,384 (May 18, 1971); *Insurance Company's Obligations,* [1969–1973 Transfer Binder] Consumer Cred. Guide (CCH) ¶ 99,438 at 89,394 (May 20, 1971); *Notice on Insurance Application—Claims Report,* [1969–1973 Transfer Binder] Consumer Cred. Guide (CCH) ¶ 99,482 at 89,443 (April 16,

1971).

Two federal district courts have also ruled on the issue presented and have reached opposite results. In *Beresh v. Retail Credit Co.*, 358 F. Supp. 260 (C.D. Cal. 1973), the court, interpreting the statutory language only, held a claims report was a consumer report. *Beresh* was the only case cited to the trial court. The more recent case, *Cochran v. Metropolitan Life Ins. Co., supra,* after carefully considering the plain language of the pertinent statutory provisions, legislative history of the act, the opinions of the enforcing agency, and case precedent, rejected the holding and analysis of *Beresh v. Retail Credit Co., supra.* The court in *Cochran v. Metropolitan Life Ins. Co., supra,* reasoned that Congress could not have intended 15 U.S.C. § 1681b(3)(E)[4] to be interpreted as permitting any possible business transaction to fall under the act, since Congress had first enumerated several specific areas the act covered. The court applied the principle that the general provision is limited by the previous specific provisions and therefore the "business transaction" must relate only to eligibility for insurance. The court bolstered its opinion by noting the FTC has consistently held insurance claims reports are not consumer reports. It further took note of the legislative history of the act, mentioning that 3 years after the FCRA was passed, amendments were proposed to include insurance claims reports under the act. Finally, the court pointed out that in analogous situations the courts tended to narrow rather than expand the boundaries of the act, except the court in *Beresh v. Retail Credit Co., supra,* which tended to broaden the act by making certain sections

---

[4]15 U.S.C. § 1681b(3)(E) provides:

"A consumer reporting agency may furnish a consumer report under the following circumstances and no other:

". . .

"(3) To a person which it has reason to believe—

". . .

"(E) otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer."

nugatory. We find *Cochran* to be the better reasoned decision.

In light of the statutory language itself, legislative history of the act, the administrative enforcement agency's opinions on this issue, and *Cochran,* we hold a claims report is not a "consumer report" within the meaning of the FCRA. But if it is later used to deny the claimant benefits, it becomes a consumer report and the fact the report was made, along with a copy of it, must be disclosed to the claimant. This is consistent with the statement of the FTC in its manual, *Compliance With the Fair Credit Reporting Act, supra* at 59,829:

> If . . . a claims report is obtained, and later used in connection with a decision to cancel, to refuse to renew, or to increase the premium charged for personal insurance for the consumer (or to take similar action in respect to specific benefits such as disability income benefits and workmen's compensation benefits provided under such policy), it is a "consumer report" when so used, and the applicable disclosures under Section 615(a) would have to be made.

However, assuming arguendo a claims report is a consumer report and thus subject to protective procedures of the FCRA, did Grange substantially comply with the act when it denied Dr. Kiblen continued disability benefits? 15 U.S.C. § 1681m(a) provides:

> Whenever . . . insurance for personal, family, or household purposes, or employment involving a consumer is denied or the charge for such . . . insurance is increased either wholly or partly because of information contained in a consumer report from a consumer reporting agency, the user of the consumer report shall so advise the consumer against whom such adverse action has been taken and supply the name and address of the consumer reporting agency making the report.

█ Here, Grange's letter to Dr. Kiblen informed him of its discontinuance of its waiver of premium benefits, and stated: "We have learned through the Interstate Detective Agency that you have been selling guns, providing income to you." We find this disclosure of the name of the investi-

gative agency, even though it did not contain the address, was substantial compliance with 15 U.S.C. § 1681m(a), because Dr. Kiblen did ask Mr. Pickle for the report shortly after receiving the letter. Dr. Kiblen's residence and the agency's office are located in close geographic proximity. The statute does not require Mr. Pickle to disclose the report. Gratuitously, we find no reason for not providing a copy of the report if it is the basis for the denial of benefits. This would be consistent with the opinion of the FTC in its compliance manual as noted above. If some of the information contained in the report is inaccurate, the claimant should be entitled to rebut it. The report is discoverable, however, under Superior Court Civil Rule 26.

Larry Pickle and Grange contend that when an insurance claimant is guilty of misrepresentation, he is not entitled to the benefit of statutory laws enacted for his protection. We disagree. The FCRA requires consumer reporting agencies to comply with the act regardless of fraud or misrepresentation on the part of the consumer.

Thus, we hold insurance claims reports are not within the FCRA. Even if it is determined the act includes claims reports, in this case we find Grange substantially complied with the act.

Reversed and dismissed.

MCINTURFF, C.J., and GREEN, J., concur.