**HOUGHTON, Donna M.**

v.

**NEW JERSEY MANUFACTURERS INSURANCE COMPANY,**
Appellant.

**No. 85–1601.**

United States Court of Appeals,
Third Circuit.

Argued June 2, 1986.
Decided July 17, 1986.

Albert S. Shaw, Jr., (argued), Patricia L. Arcuri, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa. for appellant.

Thomas C. Branca, (argued), Norristown, Pa. for appellee.

James W. Christie, Alan S. Gold, Griffith & Burr, P.C., Philadelphia, Pa., for amicus curiae, Equifax Services, Inc.

David L. Roll, Matthew H. Adler, Steptoe & Johnson, Washington, D.C., (A. James Brodsky, American Ins. Ass'n, New York City, of counsel), for amicus curiae, American Ins. Assn.

Before ALDISERT, Chief Judge, and GARTH and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Chief Judge.

This appeal requires us to decide whether the recipient of an investigative report prepared for the defense of a personal injury claim may be held liable for violating the notice and disclosure provisions of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.* relating to "investigative consumer reports" when it did not request such a report and the report, on its face, did not appear to be an investigative consumer report as defined in the statute. The district court determined that the recipient violated the FCRA's notice and disclosure requirements, and awarded damages 615 F.Supp. 299 (1985). We conclude that the district court erred, and will therefore reverse.

## I.

On November 19, 1977, Donna M. Houghton was involved in an automobile collision with Bernice P. Rosenfeld, an insured of defendant, New Jersey Manufacturers Insurance Company (NJMI). On March 16, 1979, plaintiff filed suit against Rosenfeld for injuries resulting from the collision, including a claim for lost earnings.

On May 14, 1979, NJMI requested that Equifax Services, Inc., conduct an investigation of Houghton and prepare a written report. On a preprinted form provided by Equifax, NJMI specifically requested that the investigation include: (1) "Activities since date of accident"; (2) "Cover fully past health history (Illness, injuries, hospitalization, etc.)"; and (3) "General Financial Information (Income, property, etc.)." App. at 163a. Neither Equifax nor NJMI notified Houghton that NJMI had requested the report.

On May 22, 1979, Equifax submitted to NJMI a three-page report. App. at 164a. The report included information based on interviews with four of Houghton's neighbors, a previous report regarding an insurance claim made by Houghton's mother-in-law, Montgomery County Court records, a search for previous reports on Houghton, and an examination of existing "credit files." The report stated: "We did check available credit files through a confidential source, and we are unable to come up with any financial irregularities." App. at 164a. A copy was forwarded to NJMI's counsel and in November, 1979, NJMI settled the case with Houghton.

Some four years later, on October 21, 1983, Houghton first learned of the existence of the 1979 Equifax report, and requested several times that NJMI disclose its substance to her, which NJMI repeatedly refused to do. A year later she filed this action against NJMI alleging *inter alia* that NJMI had violated the FCRA.[1] On cross motions for summary judgment, the district court ruled that the Equifax report was an investigative consumer report as defined by the FCRA, app. at 407a–14a, and that NJMI's failure to notify Houghton of its request and its subsequent refusal to disclose the report therefore violated FCRA §§ 1681d(a) and 1681d(b). *Id.* at 414a–17a.[2] After a bench trial on damages, the court awarded Houghton $7,000.00 in compensatory and punitive damages, $7,770.00 in attorney's fees, and

---

1. Houghton also alleged that NJMI had violated her right to privacy under the United States and Pennsylvania constitutions, invaded her privacy under Pennsylvania common law, and intentionally inflicted emotional distress upon her.

2. The court, however, found no federal or state constitutional violation, and found that NJMI had not invaded Houghton's privacy or intentionally inflicted emotional distress upon her. App. at 417a–23a.

$1,284.66 in costs. *Id.* at 423a, 427a. NJMI now appeals.

## II.

Before us NJMI challenges the district court's holding that the Equifax report requested by NJMI was an investigative consumer report within the meaning of FCRA § 1681a(d). NJMI also challenges the determination that it violated the FCRA by not providing Houghton notice and disclosure as required by the FCRA. Because the liability was determined by summary judgment, we apply the same standard as the district court; we must determine whether "no genuine issue as to a material fact remain[ed] for trial, and that the moving party [was] entitled to judgment as a matter of law." *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Review of the district court's resolution of questions of law is plenary. *See id.* at 574. We are satisfied that, distilled to its essence, this appeal presents questions of statutory construction.

## III.

NJMI first contests the district court's determination that NJMI violated the FCRA by not notifying Houghton that it had requested an investigative consumer report on her. It next argues that the district court erred in concluding that NJMI's failure to disclose the report to Houghton upon her request violated the FCRA.

Determining that the report Equifax submitted to NJMI was an "investigative consumer report," the court said that NJMI was liable for not notifying or disclosing the report to Houghton. We disagree. Because NJMI did not request an investigative consumer report from Equifax, and because the report, on its face, did not appear to be an investigative consumer report from Equifax, and because the report, on its face, did not appear to be an investigative consumer report as defined in the statute, we have decided that NJMI cannot be held liable for its failure to comply with the Act's notice and disclosure provisions.

## A.

The district court was persuaded that NJMI had violated § 1681d of the FCRA. This section covers only investigative consumer reports and requires all persons who "procure or cause to be prepared" investigative consumer reports to notify consumers to whom the reports pertain, and to disclose the reports to them upon request.[3] Otherwise, unless adverse action pertaining to credit, insurance, or employment is taken, *see* § 1681m, recipients or users (here, NJMI) of the information obtained from a consumer reporting agency have no duty to notify, or disclose any information to, the consumer. In those instances, the Act affords consumers protection through § 1681g, which requires consumer reporting agencies (here, Equifax) to disclose information in their files to the consumer upon request.[4]

---

**3.** FCRA § 1681d provides:

  (a) A person may not procure or cause to be prepared an investigative consumer report on any consumer unless—

  (1) it is clearly and accurately disclosed to the consumer that an investigative consumer report ... may be made, and such disclosure (A) is made in a writing mailed, or otherwise delivered, to the consumer, not later than three days after the date on which the report was first requested

  .... ˙

  (b) Any person who procures or causes to be prepared an investigative consumer report on any consumer shall, upon written request made by the consumer within a reasonable

period of time after the receipt by him of the disclosure required by subsection (a)(1) of this section shall make a complete and accurate disclosure of the nature and scope of the investigation requested. . . .

15 U.S.C. § 1681d.

**4.** Section 1681g requires consumer reporting agencies to disclose to a consumer, upon request, the nature, substance, and sources of information in their files that pertain to the consumer. 15 U.S.C. § 1681g(a)(1) and (2). All recipients of consumer reports must also be identified. *Id.* § 1681g(a)(3). However, this section requiring disclosure pertains only to consumer reporting agencies (e.g., Equifax), and

## B.

Because NJMI's request, on its face, did not ask Equifax for an investigative consumer report, we conclude that NJMI cannot be held liable for violating § 1681d(a), the notice provision of the Act.

Not every report issued from Equifax or other consumer reporting agencies qualifies as an investigative consumer report under the statute. The statutory definition provides that a "consumer report" is a report:

[U]sed or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) other purposes authorized under section 1681b of this title.[5]

15 U.S.C. § 1681a(d). An investigative consumer report is a particular species of consumer report:

(e) The term "investigative consumer report" means a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information.

*Id.* § 1681a(e).

Relying on *Heath v. Credit Bureau of Sheridan, Inc.*, 618 F.2d 693 (10th Cir. 1980), and *Boothe v. TRW Credit Data*, 523 F.Supp. 631 (S.D.N.Y.1981), the district court determined that because the credit information referred to in the Equifax report was "originally collected ... for one of the purposes listed in § 1681b," the report was a consumer report as defined by the FCRA. App. at 411a. Because other portions of the report were obtained through interviews, the court also concluded that it was an "investigative consumer report," and found NJMI liable under § 1681d(a) for not providing notice to Houghton when it requested the report from Equifax. *Id.* at 415a n. 12.

■ Our examination of the statute leads to a different interpretation. NJMI's request indicated that it concerned a "personal injury claim." App. at 163a. It asked for a "Special Activities Check" limited to "General Financial Information," "Activities since date of accident," and "past health history." *Id.* Nothing in the request indicated that NJMI desired a report on Houghton for a purpose encompassed within the statutory definition of an investigative consumer report. The request concerned only the genuineness of Houghton's personal injury claim and not her "eligibility for ... credit or insurance ... or employment...." 15 U.S.C. § 1681a(d).

We therefore hold that because NJMI did not request an investigative consumer report on Houghton, no notice was required under § 1681d(a). The district court erred in finding otherwise.

## IV.

■ We next examine the court's conclusion that NJMI violated the FCRA disclo-

---

not to the users or recipients of consumer reports (e.g., NJMI).

5. Section 1681b states:

**§ 1681b. Permissible purposes of consumer reports**

A consumer reporting agency may furnish a consumer report under the following circumstances and no other:
....
(3) To a person which it has reason to believe—
(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

(B) intends to use the information for employment purposes; or

(C) intends to use the information in connection with the underwriting of insurance involving the consumer; or
....
(E) otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer.

15 U.S.C. § 1681b.

sure requirement for failing to disclose the report to Houghton after she requested it. The statute requires one to divulge the report upon request only if the report qualifies as a "consumer report" as defined by the statute in § 1681a(d), as set forth previously in Part III B.

On its face the Equifax report did not contain sufficient detail to alert NJMI that it may have obtained an investigative consumer report from Equifax that was subject to the FCRA disclosure requirement. It was only a single isolated phrase of the Equifax report that prompted the district court to conclude that the report was a consumer report: that Equifax "did check available credit files through a confidential source and ... [was] unable to come up with any financial irregularities." App. at 164a. The district court conceded that had this phrase not been contained in the report, "[NJMI's] position that the Report is not a consumer report would be persuasive." App. at 410a. We agree with the district court that nothing else in the report would bring it within the statutory perimeters of a "consumer report," but we disagree that the naked phrase "available credit files" was sufficient to alert NJMI that the report came within the pale of the statutory definition. Absolutely nothing in the report indicates that the "available credit files" served as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used for personal, family, or household purposes, (2) employment purposes, or (3) "a legitimate business need for the information in connection with a business transaction involving the consumer." *See* §§ 1681a(d) and 1681b(3). Had the Equifax report shown on its face that it was in fact an investigative consumer report, even though NJMI did not request such a report it might have been under an obligation to disclose it in response to a specific request. However, we need not reach that issue under the facts before us.

## V.

■■■ We also do not agree with the district court's alternative holding that § 1681b(3)(E) should be read broadly to include any report involving a business transaction in the statutory definition of consumer report, and that NJMI therefore had the duty to disclose the report. The district court determined that mere potential liability under an insurance policy constituted a "business transaction" between NJMI and Houghton.[6] A broad interpretation of the "business transaction" language of § 1681b(3)(E) would render the specificity of §§ 1681a(d) and b(3) meaningless. We believe that any § 1681b(3)(E) business transaction must relate to one of the other specifically enumerated transactions in §§ 1681a(d) and b(3), *i.e.*, credit, insurance eligibility, employment, or licensing. This is to say that a consumer relationship must exist between the party requesting the report and the subject of the report.

Here, no such consumer relationship existed between NJMI, the party requesting the report, and Houghton, the subject of the report. The only parties who had a consumer relationship were NJMI and Bernice P. Rosenfeld, NJMI's insured. Thus, the report on Houghton prepared by Equifax did not fall within the statutory definition of a consumer report under § 1681b(3)(E).

We find the court's reasoning in *Cochran v. Metropolitan Life Insurance Co.*, 472 F.Supp. 827 (N.D.Ga.1979), persuasive. The *Cochran* court concluded that the "business transaction" language of § 1681b(3)(E) included, of reports pertaining to insurance, "only those information

---

**6.** The district court stated:

The Equifax Report, taken as a whole, was prepared by Equifax "in connection with a business transaction" involving defendant, defendant's insured, and plaintiff, as a result of a business agreement between those parties. Defendant bound itself to a contract for insurance where it agreed, for a premium, to provide its insured a legal defense in court proceedings and certain coverages in respect to other parties, such as plaintiff, who may during the term of the contract make claims under the precise conditions spelled out in that insurance contract.

App. at 413a.

reports prepared to determine eligibility for insurance coverage or underwriting, and not those compiled to evaluate claims for benefits." *Id.* at 832. The court held that the "apparent conflict" between § 1681a(d) and § 1681b(3)(E) should be resolved by

recognizing the preeminence of § 1681a and then conforming the breadth of § 1681b to the former's bounds. Not to do this would render unnecessarily meaningless the § 1681a restrictive language and thereby would ignore a staunch canon of statutory interpretation. Conforming § 1681b to § 1681a preserves the integrity of both sections, while promoting the underlying purpose of the entire subchapter.

*Id.* at 831 (footnote omitted). With the *Cochran* court, we rely on the rule that a statute should be interpreted so as to give effect to every phrase and not render any part superfluous. *Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979); *Armstrong Paint & Varnish Works v. Nu-Enamel Corp.,* 305 U.S. 315, 332–33, 59 S.Ct. 191, 199–200, 83 L.Ed. 195 (1938), *reh. denied,* 305 U.S. 675, 59 S.Ct. 356, 83 L.Ed. 437 (1939). We also rely on the rule of *ejusdem generis*—when general words follow an enumeration of specific terms the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words. *Harrison v. PPG Industries, Inc.,* 446 U.S. 578, 588, 100 S.Ct. 1889, 1895, 64 L.Ed.2d 525 (1980).

Here, the district court relied upon *Beresh v. Retail Credit Co.,* 358 F.Supp. 260 (C.D.Cal.1973), where the court ruled an investigative insurance claim report came within "the broad language of § 1681b(3)(E)." *Id.* at 262. The *Beresh* court, however, did not supply persuasive reasoned elaboration. It did not attempt to analyze the interpretation of § 1681a(d) and § 1681b(3), or apply concepts of statutory construction. Several courts have criticized the holding in *Beresh. See, e.g., Cochran,* 472 F.Supp. at 832 ("[W]e find that §§ 1681a and 1681b should not be read in the *Beresh* way...."); *Kiblen v. Pickle,* 33 Wash.App. 387, 395, 653 P.2d 1338, 1342

(1982) (finding *Cochran* to be the better reasoned decision); *Daniels v. Retail Credit Co.,* No. 72 CV–484, Slip op. at 7 (N.D. N.Y. Apr. 28, 1976) ("[R]eliance on ... *Beresh* ... is not well founded.")

We are convinced that *Cochran* is the better reasoned opinion and decide that the district court erred when it concluded, as an alternative holding, that this report came within the "business transaction" provision of § 1681b(3)(E). NJMI's failure to disclose the report to Houghton, therefore, as a matter of law, could not violate the FCRA's disclosure requirement. The district court's conclusion otherwise was error.

## VI.

We therefore hold that the district court erred in concluding that NJMI violated the FCRA by not notifying Houghton that it had requested the Equifax report and then not disclosing the report to Houghton. Because NJMI is not liable to Houghton, we need not address appellant's arguments concerning damages. The judgment of the district court will therefore be reversed and the case will be remanded for further proceedings consistent with the foregoing.

SLOVITER, Circuit Judge, concurring.

I join in all of the majority's opinion with the exception of Part V but fully concur with the conclusion reached in that part that an insurance claim report is not included within the "business transaction" language of section 1681b(3)(E).

To recapitulate briefly, Houghton, who was injured in an accident with NJMI's insured, contends that the report NJMI requested and received from Equifax in order to evaluate the validity of Houghton's claim was a "consumer report". "Consumer report" is defined in § 1681a(d) as certain information collected to establish "the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) other purposes authorized under section 1681b of this ti-

tle." It is the interaction of subsection (3) with § 1681b, the section to which it refers, that raises the issue here.

There is not a neat fit between them. Section 1681b, which is set forth in the margin,[1] is directed to the circumstances under which a consumer reporting agency may furnish a consumer report. The most plausible construction of the language is to read "the other purposes" language of § 1681a(d) as incorporating the "purposes" set forth in § 1681b(3), so that a consumer report is defined, *inter alia,* as a report to be used for the purposes enumerated in § 1681(b)(3). This subsection permits a consumer reporting agency to furnish a consumer report to persons which it has reason to believe intend to use the information in connection with five designated purposes: (A) a personal credit transaction; (B) employment purposes; (C) the *underwriting* of insurance involving the consumer; (D) licensing or similar benefit; or (E) to a person who *"otherwise* has a legitimate business need for the information in connection with a business transaction involving the consumer."

The majority gives subsection (E) an extremely limited construction when it states, "We believe that any § 1681b(3)(E) business transaction must relate to one of the other specifically enumerated transactions in §§ 1681a(d) and b(3), *i.e.,* credit, insurance eligibility, employment or licensing." Majority at 1149. I hesitate to join the majority's construction for the following reasons:

1. I am concerned that if § 1681b(3)(E) is given such a limited construction when that subsection is considered in connection with the definition of consumer report, it may be given a similar construction when considered in the context of the section in which it appears. That section, § 1681b, provides that "a consumer reporting agency may furnish a consumer report under the following circumstances and *no other"* (emphasis added). The majority's language could be read to suggest that a consumer reporting agency may furnish a consumer report only in connection with a credit transaction, the underwriting of insurance, employment, or licensing. Although no consumer reporting agency is a defendant here, the majority's stress of the specificity of §§ 1681b(3)(A) through (D) to support its construction for purposes of defining a consumer report is not easily separable from construction of the same section in the context of the permissible distribution by a consumer reporting agency.

2. The construction the majority applies is inconsistent with the established canon it refers to that "a statute should be interpreted so as to give effect to every phrase and not render any part superfluous." Majority at 1150. The majority's construction renders subsection (E) superfluous. If (E) is limited to the four preceding subsections, there was no reason for Congress to have written it into the statute. Furthermore, if Congress did not intend that § 1681b(3)(E) be broader than the preceding subsections (A) through (D), it would not have introduced subsection (E) with the words *"oth-*

---

1. 15 U.S.C. § 1681b provides:
   A consumer reporting agency may furnish a consumer report under the following circumstances and no other:
   (1) In response to the order of a court having jurisdiction to issue such an order.
   (2) In accordance with the written instructions of the consumer to whom it relates.
   (3) To a person which it has reason to believe—
   (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or
   (B) intends to use the information for employment purposes; or
   (C) intends to use the information in connection with the underwriting of insurance involving the consumer; or
   (D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or
   (E) otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer.

*erwise* has a legitimate business need ..."
(emphasis added).

3. I also would adopt the reasoning in *Cochran v. Metropolitan Life Insurance Co.*, 472 F.Supp. 827 (N.D.Ga.1979), but I do not read that case as compelling the majority's construction. In *Cochran*, the court limited its discussion to the issue of whether an investigative report prepared in connection with a medical disability claim could be considered a "consumer report". The court reasoned that because elsewhere in the same statute Congress expressed its definition of consumer reports for insurance purposes, *see* §§ 1681a(d)(1), 1681b(3)(C), the courts could not expand the definition to include information gathered to substantiate insurance claims. *Id.* at 831. I believe that reasoning provides ample basis for the conclusion that the relationship between Houghton and NJMI was not the type of business transaction encompassed by § 1681b(3)(E).

4. If we were compelled to make a definitive construction of § 1681b(3)(E), and I think we are not, I would prefer the reading of the statute suggested in the majority's opinion, but not adopted by it. The majority notes that "when general words follow an enumeration of specific terms the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." Majority at 1150. Thus, subsection (E) encompasses the types of business transactions *similar* to those set forth in subsections (A) through (D), but is not strictly limited to them. Although I cannot anticipate all of the types of business transactions to which subsection (E) would apply under my construction, I believe the section should be read to permit a consumer re-

porting agency to provide information in connection with a legitimate business transaction not specified in (A) through (D).

In sum, rather than extending the analysis in this case to implicate issues not before us, I would limit the statutory construction of § 1681b(3)(E) in this case to the holding that an insurance claim report is not a business transaction within that section. This construction is consistent with the Federal Trade Commission's administrative interpretation of the Act,[2] and suffices for purposes of deciding the case before us.

---

2. For example, in an FTC pamphlet on the FCRA, the following appears:

2. *Question:* Are "CLAIMS REPORTS", "ADJUSTMENT REPORTS" or other reports obtained by an insurer in connection with an insurance claim a consumer report?

*Answer:* No, not at the time obtained. A report on a consumer obtained by an insurance company in connection with a claim against it, is not used to determine a consumer's "eligibility" for insurance (Section

603(d)(1)), or in connection with the "underwriting of insurance involving the consumer" (Section 604(3)(C)). Further, such a report is not obtained in connection with "a business transaction involving the consumer" (Section 604(3)(E)), at the time it is obtained. Accordingly, such a claims report is not a "consumer report".

5 Consumer Credit Guide (CCH) ¶ 11,307 at 59,-828 (1977) (footnote omitted).