Lisa R. **KELCHNER,** Plaintiff

v.

**SYCAMORE MANOR HEALTH CENTER; Presbyterian Homes, Inc.,** Defendants.

No. 4:CV–02–0324.

United States District Court, M.D. Pennsylvania.

Feb. 27, 2004.

Clifford A. Rieders, Rieders, Travis, Humphrey, Harris, Waters & Waffenschmidt, Rodney L. Knier, Rieders, Travis Law Firm, Williamsport, PA, for Plaintiff.

Christopher M. Scalia, Morgan, Lewis & Bockius L.L.P., Philadelphia, PA, G. Scott Paterno, Vincent Candiello, Morgan, Lewis & Bockius LLP, Harrisburg, PA, for Defendants.

### MEMORANDUM AND ORDER

JONES, District Judge.

Currently pending before this Court are the parties' cross Motions for Partial Sum-

mary Judgment. We have jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) and have reviewed the submissions of the parties. For the reasons discussed below, we will grant Defendants' Motion as to Plaintiff's claim under the Fair Credit Reporting Act, 15 U.S.C. 1681 et seq. ("FCRA" or "the Act").

## PROCEDURAL HISTORY

Lisa Kelchner ("Plaintiff Kelchner") filed her Complaint on February 27, 2002, and her Amended Complaint on May 29, 2002. Plaintiff Kelchner brings this action pursuant to FCRA and the Employment Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 ("ERISA") *amended by* the Consolidated Omnibus Reconciliation Act of 1985, 29 U.S.C. § 1161 et seq. ("COBRA"), against her employer, Presbyterian Homes, Inc. ("PHI") and their subsidiary, Sycamore Manor Health Center (hereinafter collectively "Defendants").

By Order of December 3, 2002, we denied Defendants' Motion to Dismiss because Plaintiff's Amended Complaint raised an issue of first impression. By Order of March 3, 2003, we conditionally certified this matter as a class action pursuant to Fed.R.Civ.P. 23(B)(2), delineating a plaintiffs' class ("Class" or "Plaintiffs") of all persons who were employed by PHI and of whom PHI requested authorization to obtain consumer reports, as required by the FCRA.[1]

On June 25, 2003, Plaintiffs filed a Motion for Partial Summary Judgment and on July 14, 2003, Defendants filed a cross Motion for Summary Judgment. The subject of these Motions is Plaintiff Kelchner's claim that she was wrongfully terminated for refusing to sign a written authorization

to allow her employer to obtain consumer reports on her, and that members of the Class signed the authorization under duress due to the threat of termination. Plaintiff now seeks a declaratory judgment that the Defendants acted in violation of the FCRA. Defendants move for summary judgment because they claim their actions did not violate the act, and additionally, that any violation as may be determined by the Court was not "willful" within the meaning of the Act. The Motions have been briefed by both parties and are now ripe for disposition.

## FACTUAL BACKGROUND

The facts relevant to disposition of Plaintiffs' claim under the FCRA are well known to the parties and are not in dispute. Briefly, Plaintiff Kelchner was employed by PHI at Sycamore Manor Health Center for approximately nineteen (19) years. In February of 2001, she and other PHI employees were asked to sign an "Annual Statement of Personnel Policy Understanding" ("Annual Statement"). The purpose of this Annual Statement was to provide PHI with the necessary written authorization for obtaining "investigative consumer reports" in connection with the employees' continued employment by PHI. The Annual Statement informed employees that these reports "may involve personal interviews with sources such as neighbors, friends, or associates" and that they were for "employment related purposes only." (Am. Compl. at Ex. 1.)

When Plaintiff Kelchner refused to sign the Annual Statement, she was informed that receipt of an executed authorization from her by PHI was a condition of contin-

---

1. By Order of April 30, 2003 we reaffirmed our certification of the 23(b)(2) class and clarified that the class could seek only those damages statutorily available under the FCRA. We further clarified that Plaintiff's ERISA, CO-
BRA and pendent state claims were to be reserved out. Finally, we recognized that notice is not required for a 23(b)(2) class and thus vacated our prior directive.

ued employment. In addition, PHI notified her that she must sign the Annual Statement by March 21, 2000 or be taken off the active schedule. (Def. Stmt. Undisp. Mat. Facts at Ex. A.) Plaintiff Kelchner continued to refuse to sign the Annual Statement, and her work hours were reduced to zero on March 21, 2001. However, she remained on the payroll and was given an additional period of time to provide her authorization.

On June 12, 2001, Plaintiff Kelchner was sent a second, revised Annual Statement to be signed by June 19, 2001 and warned that should she fail to sign it, PHI would deem her employment "abandoned." (Def. Stmt. Undisp. Mat. Facts at Ex. D.) The revised Annual Statement, unlike the first, sought authorization for obtaining "consumer reports" containing information relating to employees' "credit standing, character, general reputation, personal characteristics, or mode of living" for the purposes of investigating "theft from residents, coworkers, or PHI property; potential fraud in insurance claims; or other forms of dishonesty." [2] (Compl. at Ex. 2.) Plaintiff Kelchner refused to sign the second Annual Statement as well, and as a result, all aspects of her employment relationship with PHI ended as of June 30, 2001.[3]

## DISCUSSION

### Standard of Review

Summary judgment is appropriate if "there is no genuine issue as to any mate-

---

**2.** Investigative consumer reports and consumer reports are subject to different requirements under the Act. As defined, a consumer report is "any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" to be used primarily to establish a consumer's eligibility for credit or insurance for personal use, or for employment purposes. 15 U.S.C. 1681a(d). An investigative consumer report provides "information on a consumer's character, general reputation, personal characteristics, or mode of living [that] is obtained through personal interviews with neighbors, friends, or associates ... or others with whom he is acquainted or who may have knowledge concerning any such items of information" and does not include any information on a consumer's credit record. 15 U.S.C. 1681a(e). By comparison, an *investigative* consumer report is far more invasive to a consumer's privacy, and the Act provides special protections to consumers when employers seeks to procure such reports. These include requiring the employer to notify the employee *within three days* of requesting a report about the specific nature of the inquiry, such as general reputation, etc., and the employee's right to request in writing a detailed description of the report, as well as requiring the employer to respond to any such request within five days. 15 U.S.C. § 1681d(a)-(b).

In the case at bar, Defendants first sought blanket authorization for the procurement of investigative consumer reports. The language of Section 1681d clearly does not support a one-time disclosure, and in fact it does not require the consumer's authorization. Investigative reports are "a particular species of consumer report." *Houghton v. N.J. Manuf. Ins. Co.*, 795 F.2d 1144, 1148 (3d Cir.1986). Because they are more invasive, an employee must be informed in close proximity of their preparation. Here, it is clear that Defendants first sought an investigative consumer report, but upon Plaintiff Kelchner's objection and refusal to sign, Defendants then sought authorization to obtain consumer reports for employment purposes only. The revised Annual Statement complies with the dictates of Section 1681b, and it is this section of the FCRA we construe, below.

**3.** Defendants assert that Plaintiff Kelchner "abandoned" her employment by not complying with a condition of continued employment, executing the Annual Statement. Plaintiff Kelchner contends that her employment was terminated by the Defendants in retaliation for her refusal to sign the Annual Statement. For the purposes of these Motions, we will construe Plaintiff Kelchner's separation from employment as a constructive termination.

rial fact and ... the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c); *see also Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340 (3d Cir.1990). The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial." *Young v. Quinlan*, 960 F.2d 351, 357 (3d Cir.1992). Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences which a fact finder could draw from them. *See Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir.1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corporation v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. *See id.* at 325, 106 S.Ct. 2548.

Rule 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e). The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor. *See Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548 (1986).

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoran-

da and briefs to establish a genuine issue of material fact." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 511 (3d Cir.1994) (citation omitted). However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "As to materiality, the substantive law will identify which facts are material." *Id.* at 248, 106 S.Ct. 2505. A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

**Analysis**

As previously noted, this case presents an issue of first impression,[4] which requires us to construe the language of the FCRA, specifically Section 1681b. The parties ask us to decide whether, under the Act, an employer is prohibited from: 1) requiring employees to sign a "blanket authorization," which would permit the employer to obtain consumer reports on employees in the future without further authorization on the part of the employees; and 2) terminating an employee who refuses to sign such an authorization.

---

**4.** The questions presented by the parties regarding Section 1681b of the FCRA raise issues of first impression within this district and the Third Circuit. Based on our research, we find that these questions have not been addressed within the other circuits as well.

Section 1681b delineates the permissible uses of consumer reports, and in particular it creates conditions that must be satisfied before consumer reporting agencies may provide such reports for employment purposes.[5] These include a provision that requires employers 1) to disclose in writing to employees or potential employees that consumer reports may be solicited for employment purposes, and 2) to obtain authorization from employees or potential employees prior to procuring such reports. 15 U.S.C. §§ 1681b(b)(2)(A)-(B). The Act defines consumer reports obtained for "employment purposes" as those reports that are "used for the purpose of evaluating a consumer [individual] for employment, promotion, reassignment or retention as an employee." 15 U.S.C. § 1681a(h).

In addition, prior to taking adverse action based in whole or part on these consumer reports, the Act requires employers to provide employees with a copy of the report and a description in writing of their rights under the Act. 15 U.S.C. §§ 1681b(b)(3)(A)-(B).

*Blanket Authorizations Pursuant to 15 U.S.C. 1681b(b)(2)(A) and (B)*

 Plaintiffs contend that the language of Section 1681b requires that the employer disclose its intent to procure a consumer report and obtain written authorization immediately prior to procuring it. Defendants counter that a one-time authorization from potential and future employees is permissible under Section 1681b. That section states that procurement is contingent upon "a clear and conspicuous disclosure" in writing to the employee "at any time before the report is procured or caused to be procured...." 15 U.S.C. 1681b(b)(2)(A). Based on our reading of the plain language of this subsection, "any time" prior to procurement can only mean that the required disclosure could take place not only in close proximity to the employer's seeking of the report, but also months or even years prior to taking such action. It is clear on the face of this subsection that Congress wanted to ensure that an employee or potential employee would be informed, via the disclosure at the time he or she signed the authorization, that his or her employer has the right to seek and obtain certain personal information for the specific employment purposes noted above.

Since the language of the statute is plain and unambiguous, we need inquire no further. *See e.g., Valansi v. Ashcroft,* 278 F.3d 203, 209 (3d Cir.2002); *Rosenberg v.*

5. FCRA § 1681b provides:

(a) **In general.**—Subject to subsection (c) of this section, any consumer reporting agency may furnish a consumer report under the following circumstances and no other:

(3) To a person which it has reason to believe—

(B) intends to use the information for employment purposes;

(b) **Conditions for furnishing and using consumer reports for employment purposes.**—

(2) *Disclosure to consumer.*—A person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—

**(A) In general**

Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—

(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

*XM Ventures,* 274 F.3d 137, 141 (3d Cir. 2001). Nevertheless, further support for this interpretation has been provided by both Congress and the Federal Trade Commission ("FTC").

Congress amended the FCRA in 1994, in part to inform consumers more thoroughly of their rights under the Act. H.R.Rep. No. 103–486, at 30 (1994). By enacting the Consumer Reporting Reform Act of 1994, Congress added subsection 1681b(b) to the FCRA to "clarify and limit[ ] the circumstances under which a consumer reporting agency is permitted to furnish a consumer report ... for employment purposes." *Id.* The House Report accompanying the amendments directly addresses the issue of blanket authorizations, stating that

> [a]lthough the bill requires that the disclosure and consent occur before a consumer report is procured, it does not require that a consumer consent each time his or her report is procured. Consequently, a person may comply with the requirements of this section by making the proper disclosure to a consumer and obtaining the consumer's *blanket,* written authorization to obtain his or her consumer report for employment purposes at any time during the tenure of the consumers employment. The person, however, must obtain this authorization before it procures any report on that consumer for employment purposes.

*Id.* (emphasis added). *See also* S.Rep. No. 104–185, at 35 (1995); S.Rep. No. 103–209, at 11 (1994). In addition, the FTC, the federal agency charged with administrative enforcement of the FCRA,[6] issued an advisory opinion letter in August 1998 supporting the one-time disclosure interpretation.[7] (Def. Mem. Opp'n. Pl. Mot. Part. Summ. J. at Ex. B.) Citing the congressional reports noted above, the opinion states that, although the amendments do not

> specifically address the issue of whether a disclosure must be made, and permission obtained, each time a consumer report is obtain[ed][sic] ... Congress [has] indicated that employers do not need to go through the disclosure/authorization process each time a report is requested; rather ... the employer may obtain a general or 'blanket' authorization from the consumer to obtain consumer reports at any time during the consumer's tenure of employment.

*Id.* The operative word utilized in both the House Report and the FTC advisory opinion is "blanket" as it modifies the word "authorization." Based on the forgoing analysis, we are confident that it is well within an employer's rights under the FCRA to require its employees to sign a blanket authorization to procure consumer reports, and will award summary judgment to Defendants on this issue. We must next turn to the issue of whether this blanket authorization can be compelled by an employer.

### Authorization Requirement Under 15 U.S.C. 1681b(b)(2)(B)

■ Plaintiffs also contend that the under Section 1681b(b)(2)(B) of the FCRA,

---

6. 15 U.S.C. § 1681s(a).

7. Advisory opinions are not the product of formal adjudication or notice-and-comment rulemaking on the part of an enforcement agency, and as such, they lack the force of law. *Christensen v. Harris County,* 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). Thus, they represent persuasive authority and are entitled to respect rather than deference. *Madison v. Resources for Human Development, Inc.,* 233 F.3d 175, 186 (3d Cir.2000). Nevertheless, the FTC's interpretation of Section 1681b(b) is consistent with both the plain language of the statute and the express intent of Congress, and thus provides additional support for our interpretation.

an employee's authorization cannot be compelled and must be voluntary. Defendants counter that the language of the subsection is silent on the issue, and that nothing in the FCRA prohibits employers from requiring authorization as a condition of continued employment.

As previously cited, Section 1681b(b)(2)(B) states that a person may not procure a consumer report for employment purposes unless "the consumer has authorized in writing the procurement of the report by that person." We agree that the statute is silent as to whether an employer can demand an employee's authorization. In discussing this subsection Congress merely stated that the authorization must be obtained prior to the procurement of any report. H.R.Rep. No. 103–486, at 30 (1994). *See also* S.Rep. No. 104–185, at 35 (1995) ("[E]mployers must obtain a specific or general written authorization prior to procuring such a report."). Further, a 1999 FTC advisory opinion letter addressed the issue of "whether an employer can take adverse action against an employee, up to and including termination, or refuse to hire an applicant, if the individual refuses to give an employer permission to obtain a consumer report ... as defined by the Fair Credit Reporting Act." (Def. Mem. Opp'n. Pl. Mot. Part. Summ. J. at Ex. A.) The letter states:

> As we read the FCRA, it is silent on the issue you posed. It thus does not prohibit an employer from taking adverse action against an employee or applicant who refuses to authorize the employer to procure a consumer report. By the same token, of course, it does not specifically authorize such action.

*Id.* However, in a 2000 advisory opinion letter, the FTC also recognized the importance of providing employers with the ability to conduct meaningful workplace investigations, stating that "the FCRA should not unduly hinder workplace investigations that are intended to foster employee protections or halt illegal activity.... [Any] amendments to the FCRA should strike a balance between the need to facilitate efficient, timely investigations and the need to retain basic safeguards for targeted employees." (Pl. Reply Br. Supp. Pl. Mot. Part. Summ. J. at Ex. 1.) Those safeguards, noted below, currently include protections to ensure " 'confidentiality, accuracy, relevancy, and proper utilization of such information' " if the employer intends to use the procured report by taking adverse action. *Id.*

In considering the language and purpose of the FCRA, it is clear that Congress desired to give employers the right to obtain consumer reports on their employees, since that information might bear on their qualifications for employment. Congress recognized a legitimate need on the part of employers to review their employees' credit standing, and well as their character and general reputation. It is equally clear that Congress did not intend to make this an unfettered right, and thus it also sought to protect the privacy interests of employees and potential employees by narrowly defining the proper usage of these reports and placing strict disclosure requirements on employers. In addition, an employer must follow special procedures if it intends to take adverse action based on these reports:

> Specifically, before taking adverse action regarding the consumers current or prospective employment, an employer must provide to the consumer a copy of the report and a written description of the consumers rights under the FCRA. The employer must also provide the consumer with a reasonable period to respond to any information in the report that the consumer disputes and with written notice and the opportunity and time period

to respond. A reasonable period for the employee to respond to disputed information is not required to exceed 5 business days following the consumers receipt of the consumer report from the employer.

H.R.Rep. No. 103–486, at 30 (1994) (discussing 15 U.S.C. 1681b(b)(3)). Thus, the Act provides strong protections against misuse of employees' personal information.

We believe that it would be inconsistent with the dictates of the Act for employees to be able to refuse employers' requests for authorization, assuming that the requesting employer has complied with the relevant provisions regarding procurement of the authorization. Were it otherwise, in the case of a prospective employee, an employer could simply refuse to hire an individual who would not provide authorization, but in the case of a refusal by an existing employee, an employer would have no recourse. We agree with Defendants that "an employee's refusal to give authorization [would] effectively bar[ ] an employer's right to rely on consumer reports for any employment purpose." (Def. Mem. Opp'n. Pl. Mot. Part. Summ. J. at 8.) Nothing within the Act endorses Plaintiffs' argument that in effect, employers are powerless to obtain authorizations from existing employees. In fact, the Act's detailed protections against misuse of information that is obtained through an employer's use of an authorization lead to a conclusion directly opposite that suggested by Plaintiffs.

Plaintiffs' claims are premature. Employers are permitted to obtain consumer reports on their employees to be used for legitimate, narrowly defined, employment purposes. However, once an employer decides to use these reports and take adverse action against their employees, they must follow procedures to ensure that they are being used fairly and accurately. Plaintiff Kelchner was notified of her employers' right to procure consumer reports on her at some point in the future and her authorization was requested. If and when PHI did obtain such reports, and if and when it decided to take any adverse action based on them, Plaintiff Kelchner's privacy interests would have been protected by the procedures delineated in the Act that PHI would have been required to follow. PHI's failure to follow the procedures would clearly subject it to a lawsuit for willful non-compliance under 15 U.S.C. 1681n. We therefore hold that an employer may require that an employee authorize procurement of consumer reports, subject to the employer's strict compliance with the Act, and will accordingly award summary judgment to the Defendants on this issue as well.[8]

### Review of Rule 23(b)(2) Class Certification

In our Order of March 3, 2003, as modified by our Order of April 30, 2003, we conditionally certified a plaintiffs class of all persons who were employed by PHI and from whom PHI sought authorization to procure consumer reports. We also stated what is clearly the case subsequent to any class certification, which is that the class certification was subject to review

8. Defendants assert that their conduct was not in willful violation of the FCRA, and thus statutory damages are unavailable to the Plaintiffs under Section 1681n. (Def. Mem. Opp'n. Pl. Mot. Part. Summ. J. at 14.) Even if we had not found, as here, that the Defendants' conduct did not violate Section 1681b of the FCRA, their conduct could not be viewed as willful because there is no evidence that Defendants "knowingly and intentionally committed an act in conscious disregard for the rights of others...." *Philbin v. Trans Union Corp.*, 101 F.3d 957, 970 (3d Cir.1996) (defining what constitutes willful noncompliance with the FCRA).

and decertification upon further development of the record.

We now have determined that it is appropriate to award summary judgment to Defendants and against Plaintiffs on the claims raised under the FCRA. Because these claims formed the underpinnings of Plaintiffs' class action, we must revisit our prior certification. Although it is evident that dismissal of Plaintiffs' FCRA claims renders the certification moot, we will now take the additional and appropriate step of formally decertifying the 23(b)(2) class.[9]

**NOW, THEREFORE IT IS ORDERED THAT:**

1. Plaintiffs' Motion for Partial Summary Judgment (doc. 44) is DENIED.

2. Defendants' Motion for Partial Summary Judgment (doc. 50) is GRANTED, as follows:

(i) proper disclosure accompanied by a "blanket" or one-time signed authorization is permissible under 15 U.S.C. § 1681b(b)(2)(A);

(ii) employers may require their employees, as a condition of continued employment, to authorize the procurement of consumer reports for employment purposes under 15 U.S.C. § 1681b(b)(2)(B);

(iii) a determination regarding whether Defendants' willfully violated the FCRA, 15 U.S.C. § 1681b(b)(2), has been rendered unnecessary by the terms of this Order and is accordingly moot.

3. The conditionally certified plaintiffs' class (doc. 29) has been rendered moot and is accordingly decertified.

---

9. In seeking to represent such a class, Plaintiff Kelchner asserted that the class could include potentially all of PHI's employees, but specifically any employee from whom PHI requested a consumer report authorization, placing that employee under duress due to the threat of termination. The Defendants argued, and Plaintiff Kelchner conceded, that of all the PHI employees, she alone was terminated for refusing to sign the Annual Statement.

Nearly a year after we conditionally certified the class, and on the eve of the close of discovery, Plaintiff has provided no further evidence of similarly situated individuals that would satisfy the requirements of Rule 23(a), particularly numerosity and typicality. It appears to the Court that Plaintiff Kelchner currently represents a class of one.

We erred on the side of caution in certifying this plaintiffs class, assuming that other employees of PHI, when faced with the possibility of at least constructive termination, felt compelled to sign the Annual Statement. At the time Plaintiff Kelchner provided no proof of such a scenario, but we concluded that additional discovery would reveal whether our assumption was correct. (Order of March 3, 2003 at 7.) Plaintiff Kelchner has failed to present us with support for her allegations, and based on the record we do not believe there would be any justification for class certification beyond this point.