**Marion COCHRAN**

v.

**METROPOLITAN LIFE INSURANCE COMPANY and Equifax Services, Inc.**

Civ. A. No. 78–1168A.

United States District Court, N. D. Georgia, Atlanta Division.

June 28, 1979.

---

Marion Cochran, pro se.

Bruce H. Beerman, Atlanta, Ga., Margaret F. Kelly, J. Austin Lyons, Jr., Alan E. Lazarescu, New York City, Smith, Cohen, Ringel, Kohler & Martin, Atlanta, Ga., for Metropolitan Life.

G. Lee Garrett, Jr., Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for Equifax.

## ORDER

RICHARD C. FREEMAN, District Judge.

This is an action by an insured against an insurer, Metropolitan Life Insurance Company, and a claims investigator, Equifax Services, Inc., pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* Plaintiff holds Metropolitan's Limited Payment Life Policy No. 660 242 986 M, having a face value of $2,000 and requiring a monthly premium of $6.60. On August 12, 1976, plaintiff submitted a statement of claim of disability together with supporting medical documentation. The insurer honored plaintiff's claim by waiving premiums payable during the initial period of disability. Plaintiff was notified that after this initial period of 24 months, he would be required to submit rigorous proof of continued disability to qualify for additional bene-

fits under the policy. Plaintiff failed to supply the needed proof and the insurer ordered an insurance claim report to be rendered by defendant Equifax. Equifax completed and returned the ordered report to Metropolitan on May 5, 1978. Plaintiff complained to both Equifax and Metropolitan that this investigation, consisting of interviews of his neighbors without prior notice to him, violated the Fair Credit Reporting Act. He later filed this *pro se* action, alleging that the purported violation of the Act embarrassed him in his community and seeking actual and punitive damages for this purported injury. The action is presently before the court on defendant Metropolitan's motion for summary judgment.

Although peripheral issues are raised, the core of Metropolitan's motion argues that a medical disability claim report is not a "consumer report" or "consumer investigative report" within the meaning and ambit of Fair Credit Reporting Act. Any inadequacies or improprieties of the claimed report are, it is urged, not violations of the Act and not cognizable in this action before the court. The defendant argues its position upon: the plain language of the pertinent statutory provisions; the announced opinions of the enforcing agency, the Federal Trade Commission ("FTC"); the case precedent; and the legislative history of the Act. Plaintiff responds that the Act does not exclude this type of report and that violations of the mandated procedures are actionable.[1] The court concludes that summary judgment should be GRANTED in favor of Metropolitan.

In the Fair Credit Reporting Act, Congress found that

[i]naccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system . . . .

15 U.S.C. § 1681(a)(1), and announced that the purpose of the Act was:

to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

15 U.S.C. § 1681(b). It is in this context of congressional findings and statement of purpose that the parties argue the permissible expanse of two statutory provisions:

15 U.S.C. § 1681a. Definitions· rules of construction

. . . . .

(d) The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal,

---

1. Plaintiff, in his response to Metropolitan's motion for summary judgment, contends that the claim investigation procedures constituted unfair and deceptive trade practices as well as violations of the Fair Credit Reporting Act. Under the circumstances, the challenged investigation will only be an unfair trade practice open to prosecution by the FTC if the investigation is also a violation of the Fair Credit Reporting Act. 15 U.S.C. § 1681s(a). If the procedures of the investigation do not fall with the ambit of the Act, plaintiff may not substitute this second allegation of wrongful trade practices.

Further, plaintiff now contends that the disputed report did not relate to an insurance "claim." This contention must be rejected upon the plaintiff's own submissions to Metropolitan. He styled his application for benefits under the policy as a "claim" pursuant to the insurance contract provisions. Relabelling his application will not alter its effect; plaintiff filed a "claim" for insurance benefits on grounds of disability. *See Jackson v. Kennesaw Life & Accident Insurance Co.,* 116 Ga. App. 107, 156 S.E.2d 470 (1967).

family, or household purposes, or (2) employment purposes, or (3) other purposes authorized under section 1681b of this title. . . .[2]

and

15 U.S.C. § 1681b.  Permissible purposes of consumer reports

A consumer reporting agency may furnish a consumer report under the following circumstances and no other:

.    .    .    .    .

(3) To a person which it has reason to believe—

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

(B) intends to use the information for employment purposes; or

(C) intends to use the information in connection with the underwriting of insurance involving the consumer; or

(D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or

(E) otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer.

Defendant Metropolitan urges § 1681a establishes that reports to determine *eligibility* for certain transactions fall within the ambit of the Act and that § 1681b gives, in effect, illustrations of those previously defined reports. Because § 1681a specifies the limits of coverage, the § 1681b illustrations arguably may not be read to exceed those limits. Therefore, Metropolitan submits that as insurance claim reports are not reports to determine eligibility for credit, employment, or insurance under § 1681a, they may not be assumed included in the loose language "otherwise . . . in connection with a business transaction involving the consumer," of § 1681b. If they are not cognizable consumer reports, they need not meet the procedural prescriptions of the Act. The plaintiff responds that claim reports are not expressly excluded and therefore must be considered to fall within those otherwise unspecified consumer transactions. *Beresh v. Retail Credit Co.*, 358 F.Supp. 260 (C.D.Cal.1973).

The court looks first to the plain meaning of the statutory language. A "consumer report" is a collection of information to determine "the consumer's eligibility for . . . insurance . . . ," or for "other purposes authorized under 15 U.S.C. § 1681b. . . ." 15 U.S.C. § 1681a(d). The only subsections of 15 U.S.C. § 1681b applicable to an insurance claim report are the explicit "in connection with the underwriting of insurance. . . ." *id.* § 1681b(3)(C), and the general "in connection with a business transaction involving the consumer." *Id.* § 1681b(3)(E). The plain meaning of the explicit references to insurance declares that reports to determine eligibility for coverage and fitness for underwriting are regulated by the Act. The meaning and scope of the final subsection are less clear. The final subsection suggests that some other insurance reports may be covered when they involve business transactions with the consumer. The question is then posed whether this suggestion of additional reports may be read to encompass all possible reports not specifically enumerated. If such a catch-all reading of the subsection is derived, the specifics of the preceding sections and subsections are ren-

---

**2.**  A related provision declares that an "investigative consumer report" means

a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information.

15 U.S.C. § 1681a(e).  References to "consumer reports" herein may also be construed to include "investigative consumer reports."

dered meaningless. There is no reason to enumerate covered reports if ultimately all reports are included. An allowance of any other imaginable reports involving consumers would logically conflict with the precision and specifics of § 1681a.

■ We must harmonize an apparent conflict of the sections, one drawing precise boundaries of application and the other suggesting no restrictions on application. The definitional section, § 1681a, has been termed a "primary" provision and the illustrative section, § 1681b, a "supplementary" provision. *Fernandez v. Retail Credit Corp.*, 349 F.Supp. 652, 654 (E.D.La.1972); Note, "Judicial Construction of the Fair Credit Reporting Act: Scope of Civil Liability," 76 Colum.L.Rev. 458, 473 (1976) [hereinafter the *"FCRA Note"*]. The conflict is resolved by recognizing the preeminence of § 1681a and then conforming the breadth of § 1681b to the former's bounds. Not to do this would render unnecessarily meaningless the § 1681a restrictive language and thereby would ignore a staunch canon of statutory interpretation.[3] Conforming § 1681b to § 1681a preserves the integrity of both sections, while promoting the underlying purpose of the entire subchapter.

■ The court therefore concludes that the term "consumer report" as defined and supplemented, includes only those reports prepared to determine an applicant's eligibility for "insurance to be used primarily for personal, family, or household purposes. . . ." 15 U.S.C. § 1681a(d)(1), or furnished "in connection with the underwriting of insurance involving the consumer . . . ." *Id.* § 1681b(3)(C). Congress has expressed this definition of consumer reports for insurance purposes; the court may not expand the definition to

include medical information gathering to substantiate disability claims. Eligibility for fiscal reasons is included; qualification upon medical reasons is not covered by the Act.

■ We have concluded that the plain meaning of the provision read in the context of the statutory purpose and with the aid of canons of construction, will resolve the question presented. The court need not look for extrinsic evidence to support this meaning. The report complained of is not within the statutory ambit and defendant Metropolitan's motion for summary judgment may be GRANTED. But, the language of the provision is admittedly confused and the one case directly on point has answered this query of coverage with the opposite interpretation. *Beresh v. Retail Credit Co., supra.* Therefore, we will lay to rest any remaining ambiguity of the statutory language by resorting to extrinsic proof to bolster the interpretation we have chosen.

The court pays great deference to the interpretation of statutory proscriptions by the agency charged with the statute's enforcement. *Wrigley v. Dunn & Bradstreet, Inc.*, 375 F.Supp. 969 (N.D.Ga.1974); *Sizemore v. Bambi Leasing Corp.*, 360 F.Supp. 252, 254 n.3 (N.D.Ga.1973); *Fernandez v. Retail Credit Co.*, 349 F.Supp. at 655. *See generally Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). Administrative enforcement of the Fair Credit Reporting Act is delegated to the Federal Trade Commission, 15 U.S.C. § 1681s(a). The FTC has announced that insurance claim reports of the sort questioned herein, are not "consumer reports" within the meaning of the statutory definition. Federal Trade Commission, Division of Consumer Credit Special Programs, Bureau of Consumer Protections, *Compliance with the*

---

3. The canon of statutory interpretation to preserve the substance and effect of all sections of an enactment compels the construction we have chosen. *See Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*, 305 U.S. 315, 332–33, 59 S.Ct. 191, 83 L.Ed. 195 (1938). The same reading of 15 U.S.C. § 1681b can be reached by applying a second canon of statutory construction: *ejusdem generis.* The final phrase of § 1681b(3)(E) under this canon must be read to

include only those reports of the same kind, class, or nature as those previously specified. The seemingly broad language of "in connection with a business transaction involving the consumer. . . . " *id.*, is thereby limited to reports similar to those compiled to determine eligibility for credit, insurance coverage, employment, or licensing. *See* 73 Am.Jur.2d *Statutes* §§ 214, 249 (1974).

*Fair Credit Reporting Act*, 33 (2d ed. 1973); R. Clontz, *Fair Credit Reporting Manual*, Appendix C–2 (Supp.1978). As claim reports are not used to determine eligibility for insurance or to decide underwriting of insurance, the FTC has declared that they are not regulated by the Act. The court has no cause to deviate from this agency declaration.

The decision that insurance claim reports are not deemed "consumer reports" is also suggested by the early and subsequent legislative history of the Act. The lengthy and heated debates surrounding: the introduction of the broadly-worded Senate bill, 823, 91st Cong., 1st Sess. (1969), the counter of the more protective House bill, H.R. 16340, 91st Cong., 2d Sess. (1970), and the compromising conference amendment to a banking bill, H.R. 15073, 91st Cong., 2d Sess. (1970, U.S.Code Cong. & Admin.News, p. 4394), never referenced insurance claims reports. *See* 116 Cong.Rec. 6200, 9861, 32639, 32644, and 36470 (1970). Three years after enactment, the original sponsor, Sen. William Proxmire, noted that such reports were not covered but perhaps ought to be. Hearings on S. 2360 before the Subcomm. on Consumer Credit of the Senate Comm. on Banking, Housing and Urban Affairs, 93rd Cong., 1st Sess. 62 (1973). He thereupon proposed an amendment to the Act which would include the gathering of information on insurance claims, S. 1840, 94th Cong., 1st Sess. § 606(b)(2) (1975). The amendment was never enacted. *See generally FCRA Note* at 465, nn.44–47, 480 n.119. The Act was not originally intended, and has not yet been altered to cover reports like the one disputed herein.

The courts have answered analogous questions of coverage in similar ways. They have found that if the challenged information gathering and compilation were not among the specifically enumerated reports, the report did not need to meet the Act's procedural strictures. *See Henry v. Forbes*, 433 F.Supp. 5 (D.Minn.1976) (lobbyist's request for information on adversary's aide is not a "consumer report"); *Ley v. Boron Oil Co.*, 419 F.Supp. 1240 (E.D.Pa. 1976) (report to establish identity of attorney for potential litigants is not a "consumer report"); *Sizemore v. Bambi Leasing Corp., supra* ("key man" insurance policy investigation serves business not personal purpose and is thus not a "consumer report"); *Peller v. Retail Credit Co.*, 359 F.Supp. 1235 (N.D.Ga.1973), *aff'd*, 505 F.2d 733 (5th Cir. 1974) (employee's lie detector test results are not part of a "consumer report"); *Porter v. Talbot Perkins Children's Services*, 355 F.Supp. 174 (S.D.N.Y. 1973) (adoption agency report on prospective adoptive parents is not a "consumer report"); *Soto v. Industrial Commission,* 18 Ariz.App. 53, 500 P.2d 313 (1972) (report on workmen's compensation claimant's physical activities is not a "consumer report"). The courts have thus tended to narrow rather than expand the boundaries of the Fair Credit Reporting Act.

The one case directly on point, *Beresh v. Retail Credit Co.*, 358 F.Supp. 260 (C.D.Cal. 1973), however, held that insurance claim reports were "consumer reports." The *Beresh* court first determined that the insurance claim report was not included in the definitional specifications of § 1681a, but then concluded that the report could be subsumed within the broad illustrations of § 1681b. The "supplementary" provision was therefore allowed to admit a category of reports which the "primary" provision was deemed to bar. In charting this interpretation, the force of the preeminent provision was fully defeated. We will not follow this course. Upon the plain meaning of the sections and with the aid of extrinsic support, we find that §§ 1681a and 1681b should not be read in the *Beresh* way, but should be read to maintain the vitality of both sections.

■ Our reading of the prescriptive ambit of the Fair Credit Reporting Act includes only those information reports prepared to determine eligibility for insurance coverage or underwriting, and not those compiled to evaluate claims for benefits. Under this reading, defendant Metropolitan's motion for summary judgment raised on grounds that the disputed report need

not satisfy the strictures of the Act, must be GRANTED. The court will entertain a motion to dismiss on behalf of co-defendant Equifax based on our holding today.

Accordingly, the court hereby GRANTS the motion for summary judgment of defendant Metropolitan Life.

IT IS SO ORDERED, this 28th day of June, 1979.