**Debra BAYNES, on behalf of herself and the class described herein, Plaintiffs**

**v.**

**ALLTEL WIRELESS OF ALABAMA, INC., et al., Defendants.**

**No. CIV.A.2:03CV1109–A.**

United States District Court,
M.D. Alabama,
Northern Division.

June 1, 2004.

Christina D. Crow, Jinks Daniel & Crow LLC, Union Springs, AL, David R. Donaldson, Donaldson & Guin LLC, Birmingham, AL, Earl Price Underwood, Jr., Law Offices of Earl P. Underwood, Fairhope, Lynn W. Jinks, III, Jinks Daniel & Crow LLC, Union Springs, AL, Tammy M. Stokes, Donaldson & Guin LLC, Birmingham, AL, for Debra A. Baynes, on behalf of herself and the class described herein, Plaintiffs.

F. Chadwick Morriss, Rushton Stakely Johnston & Garrett PA, Montgomery, AL, Martin B. Sipple, Ausley & McMullen, Tallahassee, FL, for Alltel Wireless of Alabama, Inc., Alltel Communications, Inc., Defendants.

### MEMORANDUM OPINION AND ORDER

ALBRITTON, Senior District Judge.

## I. INTRODUCTION

This cause is before the court on a Motion to Dismiss (Doc. # 9) filed by ALLTEL Wireless of Alabama, Inc. and ALLTEL Communications, Inc. (collectively "ALLTEL" or "Defendant").[1] This matter is also before the court on the Defendant's request (Doc. # 15) that this court strike the Plaintiff's brief in Opposition to the Defendant's Motion to Dismiss ("Plaintiff's Opposition Brief").[2]

The Plaintiff Debra Baynes filed a Complaint, on behalf of herself and the class described therein, bringing a claim for violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").[3] The

---

1. Rather than alternating between referring to the Defendants in the singular form ALLTEL, and the plural Defendants, the court for ease of discussion will refer to them as a singular Defendant.

2. The Defendant's request for the court to strike the Plaintiff's Opposition Brief is contained in ALLTEL's Reply Brief in Support of its Motion to Dismiss (Doc. # 15).

3. The Plaintiff lists three counts in her complaint, Count I (FCRA violation), Count II

Defendant seeks dismissal of the Plaintiff's claim. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331.

For the reasons to be discussed, the Defendant's Motion to Dismiss is due to be DENIED. The Defendant's Motion to Strike the Plaintiff's Opposition Brief is due to be DENIED as moot.

## II. *MOTION TO DISMISS STANDARD*[4]

A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir.1986) ("[W]e may not … [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted). The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. *Hishon*, 467 U.S. at 73, 104 S.Ct. 2229. Furthermore, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v.*

*Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir.1985).

## III. *FACTS*

The allegations of the Plaintiff's Complaint are as follows:

Debra Baynes applied for wireless service with ALLTEL. In determining the appropriate charges, ALLTEL used the Plaintiff's consumer credit report. As a result of analysis based in part on information in this credit report, the Defendant made an upward departure in its proposed charge to provide Baynes with wireless service. It required an increase in the deposit that Baynes needed to provide. ALLTEL failed to notify her that this action was taken in whole or in part based upon information in her consumer credit report or that it had in fact used her credit report.

## IV. *DISCUSSION*

### A.  Failure to Allege Credit Transaction

■ ALLTEL argues that FCRA notice requirements "arise only in the context of a 'credit' transaction[,]" which it asserts is made clear by incorporation of 15 U.S.C. § 1691(d)(6) of the Equal Credit Opportunity Act ("ECOA") into the definition of an adverse action for purposes of

(Class Action Allegations), and Count III (Declaratory Judgment). The Plaintiff's Count II and Count III, also relate to ALLTEL's alleged violation of the FCRA.

4. The Defendant requests that this court strike the Plaintiff's Opposition Brief for attaching and relying on materials outside of the pleadings. The Defendant argues that instead of converting its Motion to Dismiss into a motion for a summary judgment, an action that it opposes, this court retains the discretion to and should instead strike the extraneous materials submitted by the Plaintiff. This court has exclusively limited its analysis to the allegations in the Plaintiff's complaint, the text of the relevant statutes,

caselaw, published interpretations of the statutory provisions by the Federal Trade Commission and the Board of Governors of the Federal Reserve System, treatises, and legislative history contained within the Congressional Record. The Defendant argues that written testimony submitted to Congress during the hearings on the FCRA is inappropriate legislative history (Plaintiff's Opposition Brief exhibits A, B, D, E) and should not be considered in the context of a motion to dismiss. The court did not find it necessary to consider these exhibits or any other potentially questionable materials. Thus, the court will deny as moot the Defendant's Motion to Strike the Plaintiff's Opposition Brief.

the FCRA. Defendant's Motion to Dismiss and Incorporated Memorandum in Support at 3 ("Defendant's Motion"). Thus, the Defendant contends that "proof that [the][P]laintiff entered or sought to enter into a 'credit' transaction with ALLTEL is a necessary element of her FCRA claim." *Id.* at 3. Although 15 U.S.C. § 1681a (k)(1)(A) defines the term "adverse action" as having "the same meaning as in section 1691(d)(6) of this title[,]"[5] 15 U.S.C. § 1681a (k)(1)(B) broadens the definition of the term "adverse action" for purposes of the FCRA beyond the credit transactions covered by the ECOA:

(k) Adverse action.—

(1) Actions included.—The term "adverse action"—

(A) has the same meaning as in section 1691(d)(6) of this title; and

(B) means—

(i) a denial or cancellation of, an increase in any charge for, or a reduction or other adverse or unfavorable change in the terms of coverage or amount of, any insurance, existing or applied for, in connection with the underwriting of insurance;

(ii) a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee;

(iii) a denial or cancellation of, an increase in any charge for, or any other adverse or unfavorable change in the terms of, any license or benefit de-

scribed in section 1681b(a)(3)(D) of this title; and

(iv) an action taken or determination that is—

(I) made in connection with an application that was made by, or a transaction that was initiated by, any consumer, or in connection with a review of an account under section 1681b(a)(3)(F)(ii) of this title; and

(II) adverse to the interests of the consumer. 15 U.S.C. § 1681a(k)(1).

The use of the word "and" to join subsection (k)(1)(A) and subsection (k)(1)(B) conveys that the statute defines an adverse action as including both the definition in (A) plus[6] the definition in (B). Any potential ambiguity is clarified by the use of the words "means" relating back to the term "adverse action" and connecting forward to the insurance, employment, licensing, and catch-all provisions. Consequently, the Defendant's assertion that the Plaintiff in stating a claim under the FCRA must allege that she sought to enter into a credit transaction is incorrect.

B.  Express Exemption of Incidental Credit Transactions

██ ALLTEL contends that "[a]t most, the transaction alleged in the complaint involves 'incidental credit,' which is expressly exempt from the FCRA notice requirement." Defendant's Motion at 5. As interpreted by the Defendant, 12 C.F.R. § 202.3[7] "provides that incidental credit is exempt from the notice requirements of

---

5.  For purposes of this subsection, the term "adverse action" means a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional

credit would exceed a previously established credit limit. 15 U.S.C. § 1691(d)(6).

6.  That the word "and" would in normal parlance be used as opposed to the word "plus" to convey the court's explanation, is illustrative of how the word is used generally, and how it is used specifically in this statute.

7.  12 C.F.R. § 202.3 is also known as Equal Credit Opportunity (Regulation B).

the FCRA." *Id.* at 6. The Defendant asserts that "any exemption for incidental credit found in Regulation B applies to the ECOA and, by implication, the FCRA." *Id.* The Plaintiff responds by asserting that 15 U.S.C. § 1681s(a)(4), specifically deprives the Board of Governors of the Federal Reserve System ("the Fed")[8] of the authority to prescribe trade regulation rules or other regulations with respect to the FCRA. Plaintiff's Opposition at 11–12. The problem with the Plaintiff's argument, which she concedes in a supplemental brief, is that 15 U.S.C. § 1681s(a)(4) was repealed in 1999. Fair Credit Reporting Act, PUB. L. 106–102, § 506(b). In her supplemental brief, however, the Plaintiff correctly points out that in amending the FCRA, Congress enacted a provision that addresses the scope of the Fed's regulatory authority. Through 15 U.S.C. § 1681s(e)(1), Congress limited the regulatory authority of the Fed under the FCRA "to prescrib[ing] regulations consistent with such joint regulations[9] with respect to bank holding companies and affiliates (other than depository institutions and consumer reporting agencies) of such holding companies." Consequently, the application of 12 C.F.R. § 202.3, which was issued by the Fed pursuant to their regulatory authority under the ECOA, to these parties under the FCRA would contravene an explicit limitation imposed by Congress.

Independent of this concern, there are several additional problems with the Defendant's argument and analysis. The Defendant cites to *Williams v. AT & T Wireless Servs., Inc.,* 5 F.Supp.2d 1142 (W.D.Wash.1998) in support of the proposition that a cell phone or wireless service provider that requires a security deposit falls within the category of an incidental credit transaction. The *Williams* case does support the proposition that such transactions are exempt from the adverse notice requirement under the ECOA. *Id.* at 1147. It is unclear to this court, however, how the Defendant reaches the conclusion that such transactions are exempt from the notice requirements of the FCRA. The Defendant draws this conclusion without providing the court a trail of what analytical steps it has taken.

*Williams,* which is cited by the Defendant as support for its position, actually points towards the opposite conclusion. The court in *Williams* did not apply its finding that such transactions fell within the scope of the incidental credit exemption for purposes of the ECOA as a defense to the Plaintiff's claim that the wireless provider acted in contravention of 15 U.S.C. § 1681q of the FCRA by *obtaining a credit report without a permissible purpose. Id.* at 1144, 1147–52. Rather than finding that such transactions are unprotected under the FCRA, the court concluded that the purpose for which the defendant used the report fell within the legitimate business need exception to 15 U.S.C. § 1681q. *Id.* at 1151. The court found that the wireless service provider's security deposit arrangement fit within the "mold" of "transactions initiated by the consumer where the party transacting with the consumer has an interest in determining the consumer's ability to pay." *Id.* at 1152. An opinion by a district court in Oregon points to the potential significance of this conclusion for purposes of this case:

**8.** The Board of Governors of the Federal Reserve System issued 12 C.F.R. 202.3.

**9.** "Such joint regulations" refers to regulations promulgated by the "the Federal banking agencies referred to in paragraphs (1) and

(2) of subsection (b) [, which] shall jointly prescribe such regulations as necessary to carry out the purposes of this subchapter with respect to any persons identified under paragraphs (1) and (2) of subsection (b) of this section . . . ." 15 U.S.C. § 1681s(e)(1)

Various House Reports indicate ... the definition of "adverse action" was meant to be interpreted broadly and to parallel generally the "permissible purpose" provisions in § 1681b(3) .... In addition, "whenever a consumer report is obtained for a permissible purpose[,] ... a denial of a benefit based on the report triggers the adverse action notice requirements." H.R.Rep. No. 102–692, at 21 (1992); *see also* S.Rep. No. 103–209, at 8 (1993); H.R.Rep. No. 103–486 (1994). *Razilov v. Nationwide Mut. Ins. Co.*, 242 F.Supp.2d 977, 991 (D.Or. 2003).

Therefore, when a wireless provider acts with a permissible purpose pursuant to the legitimate business need catch-all provision [10] in obtaining a consumer report to determine if a higher security deposit will be charged based upon negative credit information contained in that consumer report, the taking of an adverse action against the consumer based on that report triggers the FCRA notification requirements.

## C.   Counter–Offer

■ ALLTEL asserts that pursuant to limitations imposed by 12 C.F.R. § 202(c)(1)(i), the Plaintiff cannot demonstrate that she suffered an adverse action. This regulation defines adverse action in part as "[a] refusal to grant credit in substantially the amount or on substantially the terms requested in an application unless the creditor makes a counteroffer (to grant credit in a different amount or on other terms) and the applicant uses or expressly accepts the credit offered ...." 12 C.F.R. § 202(c)(1)(i). In addition to the aforementioned questions about the relevance in this FCRA case of regulations promulgated by the Fed governing the ECOA, the Plaintiffs correctly point out that their complaint does not indicate that

the applicant used or expressly accepted the credit offered (the counter-offer) of the Defendant. Consequently, regardless of the applicability of 12 C.F.R. § 202(c)(1)(i) in such circumstances, a set of facts exists consistent with the complaint where this provision would not apply, that is, where the Plaintiff did not accept the counter-offer. The Defendant, however, asserts that the Plaintiff must as one of the elements of her case allege that she did not accept a counter-offer. The Defendant fails to provide any indication to this court as to why not accepting a counter-offer should be considered part of the Plaintiff's case, as opposed to requiring the Defendant to assert that Plaintiff did accept the counter-offer as an affirmative defense.

## D.   The Catch-all Provision and Adverse Action

■ 15 U.S.C. § 1681a(k)(1)(B)(iv) defines an adverse action as "an action taken or determination that is—(I) made in connection with an application that was made by, or a transaction that was initiated by, any consumer, or in connection with a review of an account under section 1681b(a)(3)(F)(ii) of this title; and (II) adverse to the interests of the consumer." Pursuant to 15 U.S.C.A. § 1681m(a), "[i]f any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report," the notification requirement is triggered. The plain language of the statute provides for an expansive understanding of what constitutes an adverse action. Contrary to the Defendant's assertion, the text supports the conclusion that a consumer who initiates a transaction or applies for service with a wireless provider, and who is required to pay a higher security deposit fee due to something negative in her credit history, has suffered an adverse action un-

10.   15 U.S.C. § 1681b(a)(3)(F).

der the FCRA. Thus, the notification requirement is triggered.

Whatever ambiguity exists with regard to the scope of adverse action under the FCRA, the Defendant's viewpoint encounters opposition, rather than support, in the interpretations advanced by the Federal Trade Commission ("FTC"), which is the administrative agency charged with significant enforcement responsibilities under the FCRA. 15 U.S.C. § 1681s(a); *see also Cochran*, 472 F.Supp. at 831 ("[a]dministrative enforcement of the Fair Credit Reporting Act is delegated to the Federal Trade Commission ....") (internal citations omitted). The FTC's interpretation of this catch-all provision mirrors the expansive language itself. It notes that "the term 'adverse action' is defined very broadly by Section 603 of the FCRA." 16 C.F.R. Pt. 601, App. C(I)(C). According to the FTC, "'adverse actions' include all business, credit, and employment actions affecting consumers that can be considered to have a negative impact—such as unfavorably changing credit or contract terms or conditions, denying or canceling credit or insurance, offering credit on less favorable terms than requested, or denying employment or promotion." *Id.* It is not immediately apparent to this court, nor does the Defendant present an argument, as to why this definition would not include as an adverse action the increased security deposit that ALLTEL allegedly required Baynes to pay.

With 15 U.S.C. § 1681m, Congress imposed requirements upon users of consumer reports.[11] A user of a consumer report who or which takes adverse action on the basis of information contained in that report incurs certain duties:

11. Under the FCRA, a consumer report is defined as follows:
> (1) In general.—The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
>> (A) credit or insurance to be used primarily for personal, family, or household purposes;
>> (B) employment purposes; or
>> (C) any other purpose authorized under section 1681b of this title.
> (2) Exclusions.—The term "consumer report" does not include—
>> (A) any—
>> (i) report containing information solely as to transactions or experiences between the consumer and the person making the report;
>> (ii) communication of that information among *persons related by common* ownership or affiliated by corporate control; or
>> (iii) communication of other information among persons related by common ownership or affiliated by corporate control, if it is clearly and conspicuously disclosed to the consumer that the information may be communicated among such persons and the consumer is given the opportunity, before the time that the information is initially communicated, to direct that such information not be communicated among such persons;
>> (B) any authorization or approval of a specific extension of credit directly or indirectly by the issuer of a credit card or similar device;
>> (C) any report in which a person who has been requested by a third party to make a specific extension of credit directly or indirectly to a consumer conveys his or her decision with respect to such request, if the third party advises the consumer of the name and address of the person to whom the request was made, and such person makes the disclosures to the consumer required under section 1681m of this title; or
>> (D) a communication described in subsection (*o*) of this section.
> 15 U.S.C. § 1681a(d).

If any person takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall—

(1) provide oral, written, or electronic notice of the adverse action to the consumer;

(2) provide to the consumer orally, in writing, or electronically—

(A) the name, address, and telephone number of the consumer reporting agency (including a toll-free telephone number established by the agency if the agency compiles and maintains files on consumers on a nationwide basis) that furnished the report to the person; and

(B) a statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken; and

(3) provide to the consumer an oral, written, or electronic notice of the consumer's right—

(A) to obtain, under section 1681j of this title, a free copy of a consumer report on the consumer from the consumer reporting agency referred to in paragraph (2), which notice shall include an indication of the 60–day period under that section for obtaining such a copy; and

(B) to dispute, under section 1681i of this title, with a consumer reporting agency the accuracy or completeness of any information in a consumer report furnished by the agency.

15 U.S.C. § 1681m(a).

As previously stated, the FCRA defines an adverse action as:

(1) Actions included.—The term "adverse action"—

(A) has the same meaning as in section 1691(d)(6) of this title; and

(B) means—

(i) a denial or cancellation of, an increase in any charge for, or a reduction or other adverse or unfavorable change in the terms of coverage or amount of, any insurance, existing or applied for, in connection with the underwriting of insurance;

(ii) a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee;

(iii) a denial or cancellation of, an increase in any charge for, or any other adverse or unfavorable change in the terms of, any license or benefit described in section 1681b(a)(3)(D) of this title; and

(iv) an action taken or determination that is—

(I) made in connection with an application that was made by, or a transaction that was initiated by, any consumer, or in connection with a review of an account under section 1681b(a)(3)(F)(ii) of this title; and

(II) adverse to the interests of the consumer. 15 U.S.C. § 1681a(k)(1).

■ The Defendant, nevertheless, argues that "any alleged adverse action [under the FCRA] must relate to one of the specifically enumerated transactions, i.e., credit, insurance, employment or licensing." Defendant's Reply Brief at 12. In support of this proposition, the Defendant cites to *Houghton v. New Jersey Mfrs. Ins. Co.*, 795 F.2d 1144 (3d Cir.1986), RALPH C. CLONTZ, JR., FAIR CREDIT REPORTING MANUAL (2d ed.1973), and *Cochran v. Metro. Life Ins. Co.*, 472 F.Supp. 827 (N.D.Ga.1979). A series of problems exists with the Defendant's reliance upon these authorities to support the proposition that "adverse action" as defined in 15 U.S.C. § 1681a(k)(1)(B)(iv), the catch-all provision, is no broader than the credit,

insurance, employment, or licensing provisions (the specific categories listed in 15 U.S.C. § 1681a(k)(1)).

One of problems with the Defendant's reliance on these earlier authorities is that 15 U.S.C. § 1681a(k)(1)(B)(iv) was added, along with the other parts of the definition of adverse action, as part of a number of amendments to the FCRA in 1996. Fair Credit Reporting Act, PUB. L. 104–208. "The Consumer Credit Reporting Act of 1996 (Reform Act), signed into law September 30, 1996, and effective September 30, 1997, substantially revised the Fair Credit Reporting Act." DAVID McF. STEMLER, FEDERAL FAIR LENDING AND CREDIT PRACTICES MANUAL § 10.01[1] (2003).

Furthermore, the Defendant's interpretation of how catch-all provisions in the FCRA should be defined is inconsistent with the caselaw in this area. The Defendant is correct that in 1986, the Third Circuit, interpreting the business transaction language of what was then 15 U.S.C. § 1681b(3)(E),[12] found that "[a] broad interpretation of the 'business transaction' language of § 1681b(3)(E) would render the specificity of §§ 1681a(d) and b(3) meaningless. We believe that any § 1681b(3)(E) business transaction must relate to one of the other specifically enumerated transactions in §§ 1681a(d) and b(3), i.e., credit, insurance eligibility, employment, or licensing." *Houghton,* 795 F.2d at 1149. In a concurring opinion, one

of the judges expressed disagreement with the majority's narrow construction of the statute. Judge Sloviter noted that "[t]he construction the majority applies is inconsistent with the established canon it refers to that 'a statute should be interpreted so as to give effect to every phrase and not render any part superfluous.'" *Id.* at 1151 (Sloviter, J., concurring). The construction by the majority in *Houghton* rendered the then existent subsection (E) superfluous. *Id.* If Congress actually intended for the interpretation of the scope of subsection (E) to be limited to the preceeding subsections, then there was no reason for Congress to have written subsection (E) into the statute. *Id.* Regardless, the concurrence suggests that fully defining the scope of subsection (E) was not really an issue before the court, thereby implying that the majority's analysis is mere dicta. *Id.* at 1152.

■ "A basic principle of statutory construction is that a statute should not be construed in such a way as to render certain provisions superfluous or insignificant." *Bouchard Transp. Co., Inc. v. Updegraff,* 147 F.3d 1344, 1351 (11th Cir. 1998) (quoting *Woodfork v. Marine Cooks & Stewards Union,* 642 F.2d 966, 970–71 (5th Cir. April 1981)[13]). The Defendant endeavors to apply the *Houghton* majority's analysis of the former 15 U.S.C. § 1681b(3)(E) provision to the current 15

---

**12.** 15 U.S.C. § 1681b delineated the permissible purposes for which a consumer reporting agency could provide a consumer report. Furnishing a consumer report to a person, who "otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer[,]" constituted a permissible purpose. *Houghton,* 795 F.2d at 1149 (quoting 15 U.S.C. § 1681b(3)(E) (this statute has been amended subsequently)). The amended permissible use catch-all provision provides that a consumer report can permissibly be provided to anyone, who "otherwise has a legitimate

business need for the information—(i) in connection with a business transaction that is initiated by the consumer; or (ii) to review an account to determine whether the consumer continues to meet the terms of the account." 15 U.S.C. § 1681b(a)(3)(F).

**13.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

U.S.C. § 1681a(k)(1)(B)(iv). To do so would effectively render the adverse action catch-all provision a nullity. No purpose would be served in Congress having included this catch-all provision if the entire scope of protection it afforded to consumers was already to be found in the preceding specifically enumerated sections relating to credit, employment, insurance, and licensing. Such an interpretation is inconsistent with what is a basic principle of statutory construction, that a statute should not be construed to render provisions superfluous. *See Bouchard Transp. Co.,* 147 F.3d at 1351.

In reaching this conclusion, it is perhaps unnecessary for this court to come into direct conflict with the majority opinion of the Third Circuit in *Houghton* or with its interpretation of the United States District Court for the Northern District of Georgia decision in *Cochran.*[14] The Fifth Circuit Court of Appeals distinguished these cases, noting "that the reports at issue in those cases were prepared and transmitted specifically as insurance claims reports, not general credit reports. In each case, the insurance company asked a credit reporting agency to prepare a report relating to a specific insurance claim on a preexisting policy." *St. Paul Guardian Ins. Co. v. Johnson,* 884 F.2d 881, 885 (5th Cir.1989). The Fifth Circuit distinguished such insurance claims reports on the basis "that both the text of § 1681a(d) of the FCRA—which speaks in terms of 'eligibility' for insurance—and the legislative history of the FCRA make it clear that reports created and prepared for the specific pur-

pose of the investigation of insurance claims are outside the FCRA." *Id.* Similarly, a district court in the Third Circuit distinguished these cases based on the fact that actual credit reports were neither requested nor received by defendants in those cases. *Hall v. Harleysville Ins. Co.,* 896 F.Supp. 478, 482 (E.D.Pa.1995). The plaintiff in *Hall* was able to support this argument by citing to "a number of cases holding that the FCRA covers actual credit reports because those reports were originally collected for the purposes of determining eligibility for insurance, credit or employment, even if they were not used for those purposes in these particular instances." *Id.* (citing *St. Paul Guardian Ins. Co. v. Johnson,* 884 F.2d at 883; *Ippolito v. WNS, Inc.,* 864 F.2d 440, 453 (7th Cir.1988), *cert. dismissed,* 490 U.S. 1061, 109 S.Ct. 1975, 104 L.Ed.2d 623 (1989); *Zeller v. Samia,* 758 F.Supp. 775, 780 (D.Mass.1991)).

The Eleventh Circuit in drawing upon the Third Circuit's opinion in *Houghton* and the Northern District of Georgia opinion in *Cochran* similarly limited its holding to the confines of insurance claims reports. The Eleventh Circuit in *Hovater v. Equifax, Inc.,* 823 F.2d 413, 419 (11th Cir.1987) did not reach a conclusion on the proper scope of the former 15 U.S.C. § 1681b(3)(E), but did specify whether insurance claims reports would fall within that provision: "Whatever the proper interpretation of Section 1681b(3)(E), we hold that that provision does not reach insurance claims reports." The court not-

---

14. The *Houghton* majority's reading of *Cochran* may be excessively broad. As noted in the *Houghton* concurrence, the court in *Cochran* "limited its discussion to the issue of whether an investigative report prepared in connection with a medical disability claim could be considered a 'consumer report.'" *Houghton,* 795 F.2d at 1152 (3d Cir.1986) (Sloviter, J., concurring). From there, "[t]he

[*Cochran*] court reasoned that because elsewhere in the same statute Congress expressed its definition of consumer reports for insurance purposes, see §§ 1681a(d)(1), 1681b(3)(C), the courts could not expand the definition to include information gathered to substantiate insurance claims." *Id.* (citing *Cochran,* 472 F.Supp. at 831).

ed that "Congress expressly discussed insurance in both definitional sections of the Act. See §§ 1681a and 1681b. In so doing, Congress spoke in terms of information relating specifically to the inception and maintenance of the insurance contract." *Id.* Thus, the court concluded that "[a]s Congress declined in its explicit treatment of the subject of insurance to regulate insurance claims reports, we decline the opportunity to do so by reading the catch-all provision of Section 1681b(3)(E) to effectuate that end." *Id.*

The United States District Court of Appeals for the District of Columbia Circuit indicated that the question of determining the scope of 15 U.S.C. § 1681b(3)(E) "involves a standard difficulty with any catch-all phrase—that it should not be read so broadly as to render all the specific terms superfluous or so narrowly as to become superfluous itself." *Trans Union Corp. v. F.T.C.,* 81 F.3d 228, 233–34 (D.C.Cir.1996). The court concluded that "[t]he 'legitimate business' catchall of § 1681b(3)(E) is best understood as meaning types of business transactions similar to those set forth in subsections (A) through (D), i.e., those for which information gathered for credit (and the other specific purposes) is central." *Id.* at 234. Applying this test, the Washington district court in *Williams,* discussed earlier, concluded that the defendant's use of the plaintiff's credit report in determining that it would require a seven hundred dollar security deposit before providing Williams with wireless service fell within the legitimate business need exception of 15 U.S.C. § 1681b(3)(E). *Williams,* 5 F.Supp.2d at 1151. Thus, even analyzing this transaction in accordance with the Defendant's view that interpretations of the former catch-all provision of the permissi-

ble purposes section of the FCRA, 15 U.S.C. § 1681b(3)(E),[15] should control the interpretation of the FCRA's adverse action catch-all provision, this court concludes that the type of consumer activities involved in this case are not excluded from the protections of the FCRA.

### E. Existing Relationship

■ The Defendant argues that because there is no allegation in the complaint that the relationship between ALLTEL and Baynes was already in existence, she does not fall within the catch-all provision of 15 U.S.C. 1681a(k)(1)(B). The Defendant notes that the adverse action catch-all provision applies to "(iv) an action taken or determination that is—(I) made in connection with an application that was made by, or a transaction that was initiated by, any consumer, or in connection with a review of an account under section 1681b(a)(3)(F)(ii) of this title; and (II) adverse to the interests of the consumer." 15 U.S.C. § 1681a(k)(1)(B)(iv). ALLTEL construes this provision as limiting the adverse action catch-all provision to actions where a consumer report is used "to review an account to determine whether the consumer continues to meet the terms of the account." 15 U.S.C. § 1681b(3)(F)(ii). The plain language of the statute creates three categories: (1) an action or determination that is made in connection with an application that was made by any consumer, (2) an action or determination that is made in connection with a transaction that was initiated by any consumer, and (3) an action taken or determination that is made in connection with a review of an account under 15 U.S.C. § 1681b(a)(3)(F)(ii). 15 U.S.C. § 1681a(k)(1)(B)(iv). The statute uses the word "or" to join these categories.

---

**15.** Although the *Williams* case is a 1998 decision, the court decided the law under the pre-1996 amendments version of the statute. *Williams,* 5 F.Supp.2d at 1149 n. 3. The court

noted the amendments, but indicated that the transaction at issue in the case occurred before they became effective on September 30, 1997.

Drawing upon the "meaning of the word 'or' that the dictionary, common sense, and the experience of life all bring to us[,] ... [t]here simply is no way around the fact that, in the English language, the word 'or' unambiguously signifies alternatives." *Van Wersch v. Dep't of Health and Human Servs.*, 197 F.3d 1144, 1151 (Fed.Cir. 1999).[16] It is not clear to the court why the Defendant construes the catch-all provision to be limited to the third category, reviewing an account under 15 U.S.C. § 1681b(a)(3)(F)(ii). In construing the statute in such a manner, the defendant misreads the FCRA's adverse action catch-all provision. Accordingly, Baynes does not need to demonstrate that she and ALLTEL had an existing relationship.

## V. CONCLUSION

For the reasons discussed, the court concludes that the Defendant's Motion to Dismiss (Doc. # 9) is due to be and is hereby ORDERED DENIED. Also, for the reasons discussed, the Defendant's Motion to Strike the Plaintiff's Opposition Brief (Doc. # 15) is DENIED as moot.

The Defendant is DIRECTED to file an Answer **on or before** June 15, 2004.

---

16. WEBSTER'S INTERNATIONAL DICTIONARY defines "or" as follows: "used as a function word to indicate (1) an alternative between different or unlike things, states, or actions ... (2) choice between alternative things, states, or courses." WEBSTER'S INT'L DICTIONARY 1585 (3d ed.1967).